[Crim. No. 428.   Fourth Appellate District.—November 24, 1937.]

THE PEOPLE, Respondent, v. J. AMADOR SALAZAR, Appellant.

A. C. Finney for Appellant.

U. S. Webb, Attorney-General, Frank Richards, Deputy Attorney-General, Elmer W. Heald, District Attorney, and R. I. French, Deputy District Attorney, for Respondent.

BARNARD, P. J.—The defendant was convicted of negligent homicide, under section 500 of the Vehicle Code, as a result of an automobile collision which occurred about 11 o'clock P. M. on July 9, 1937, on U. S. Highway 99, between El Centro and Heber. This highway runs east and west, was paved to a width of twenty feet and had a white stripe along the center of the pavement. A collision occurred between a Ford coupe driven in an easterly direction by the defendant and a Chevrolet sedan driven in a westerly direction by one Charles Gillett, as a result of which Gillett died. The case was tried before a jury and the defendant has appealed from the judgment and from an order denying a new trial upon the sole ground that the evidence is insufficient to support the verdict and judgment.

Two officers who arrived at the scene shortly after the accident testified that they found the deceased's car on the north side of the highway facing south, and the defendant's car on the south side of the highway, some ten or fifteen feet easterly from the other car, and headed in a northwesterly direction. They also testified that they found oil, tire and other marks on the north half of the pavement; that the pavement was skinned; that they followed the skinned place on the pavement, which led to the appellant's car, a distance of twenty-seven feet; that the engine of the appellant's car had broken from its frame and the front part thereof was resting on the ground; and that the skinned place on the pavement began at a point three feet four inches north of the center line, about opposite where the deceased's car was resting, and led continuously to the point where the front end of the engine of appellant's car was resting on the ground.

The appellant contends that the state's case rests entirely upon the conclusion that he is guilty because his car, in some unknown way, made these marks while the undisputed testimony of his witnesses shows that the collision took

place on the south side of the center line of the pavement, where he was rightfully driving. It is argued that in order to sustain a conclusion that the collision took place on the north half of the pavement where the marks began "the court must wholly disregard the undisputed testimony on the part of the defendant and a Mr. Stindt, who was the only witness to the accident, and also disregard the operation of certain natural laws of which the court takes judicial notice".

The appellant testified that he was driving east; that shortly before the accident happened he passed a car going in the same direction; that after passing this car he returned to and continued along his right side of the road at a speed of about thirty-five miles an hour; that he observed the other car approaching from the opposite direction; that this car appeared to be coming directly toward him; that its head-lights were high and very bright; that he was blinded by them so that he could not see where he was going; that he slowed down his car and turned toward the right; and that the crash came and he was knocked unconscious. Mr. Stindt testified that shortly before the accident the appellant's car passed his car going in the same direction at about thirty-five miles an hour; that after passing him the appellant's car returned to and continued along the right side of the high-way; that he did not see the lights of any approaching car; that when he was 500 or 600 feet away he heard a crash and saw the car which had just passed him go up into the air five or six feet; that he was the first person to arrive at the scene of the accident; and that he found the two cars resting in positions substantially as testified to by the officers. While he testified that he could not say whether the two cars came together on the north or the south side of the white center line he also said that the car which went up in the air both went up and came down on the "right side of the pavement", in other words, on the same side.

The appellant concedes that his car made the marks which began three feet four inches north of the center line of this pavement and led to that car. It is argued, however, that it conclusively appears that this car was struck on the south side of the highway; that when it went up into the air five or six feet it came down on the north half of the highway, and the loosened engine made the mark which led to the place where the car came to rest; that the Chevrolet was a heavier car;

that the appellant's car was struck with great force on its left front corner by the left front end of the Gillett car; that the force of such a blow and the place and manner in which the car was struck would, by operation of natural laws, cause the front end thereof to go over to the left a distance of several feet; and that this accounts for the presence of the appellant's car at the point where its engine apparently began to drag on the pavement.

█ Assuming that the jury could have accepted appellant's theory as to how his car got over to the north side of this road it cannot be said that the facts, considered in connection with the operation of natural laws, compel that conclusion. It has been frequently pointed out that what actually occurs in accidents of this nature cannot be conclusively determined from the positions and conditions in which the cars are left and from the application of the laws of physics because of the many elements and uncertainties which necessarily exist. (*Nagamatsu* v. *Roher,* 10 Cal. App. (2d) 752 [53 Pac. (2d) 174], and cases there cited.) In *Hawthorne* v. *Gunn,* 123 Cal. App. 452 [11 Pac. (2d) 411], we said: "Perhaps there is nothing more certain about an automobile accident than the fact that the visible results afterward are not an infallible guide in determining what occurred."

The marks on the pavement north of the center line and leading to appellant's car were not made in some unknown way. The appellant concedes that they were made by his car and it was a question for the jury how that car arrived at the point from which they started. Not only could the jury draw inferences other than those drawn by the appellant, but there was other important evidence not mentioned by him which supports the jury's conclusion. It appears, without conflict, that there was a tire mark on the soft ground to the north of this highway which led to the rear wheel of the Gillett car. This mark was about three feet six inches from the north edge of the pavement and extended easterly for some twenty-eight feet to the point where it left the pavement. The only inference possible is that the right side of the Gillett car was some three feet to the north of the north edge of the pavement for approximately twenty-eight feet before the collision occurred. In addition to this one witness testified that he smelled liquor on the breath of the appellant at the

scene of the accident, another witness testified that he smelled liquor on his breath when he arrived at the hospital, and a doctor testified that he vomited about an hour after he was received at the hospital and that the contents of his stomach had the appearance of wine and smelled like alcohol. A witness testified that the appellant said nothing at the scene of the accident that night except to swear, and an officer testified that on the next day he asked the appellant how the accident happened and he replied: "Well, I don't know exactly how it did happen, I was too drunk to know."

The entire question was one of fact for the jury, the matters argued by the appellant raise no more than a conflict at best, and the evidence is sufficient to sustain the judgment.

The judgment and order are affirmed.

Marks, J., and Jennings, J., concurred.