[Civ. No. 14524.   First Dist., Div. One.   Mar. 1, 1951.]

FRED BROWN et al., Appellants, v. JACK & JEFF
TRANSFER COMPANY et al., Respondents.

E. C. Mahoney for Appellants.

Carroll, Davis & Friedenrich for Respondents.

BRAY, J.—In consolidated actions, tried without a jury, for damages for personal injuries received in a collision between an automobile and a truck, judgment went for defendants. Plaintiffs appealed.

### QUESTIONS PRESENTED

Plaintiffs claim that the evidence is insufficient to support the judgment because the physical facts belie the oral testimony. Both actions were brought against the driver and the owners of the truck,—a tractor and semitrailer type. One was by plaintiff Fred Brown, the driver of the automobile, a Terraplane with two-wheel trailer attached. The other was by his brother, Ray, who was a passenger in the car. In the Fred Brown action, defendants cross-complained for damages to the truck. The cases were consolidated for trial. In each case the court found that defendants were free from negligence and that the sole cause of the accident was the negligence of plaintiff Fred. It rendered a single judgment covering both cases, in favor of defendants on the complaint, and on the cross-complaint gave defendants the sum of $1,000 for damage to the truck.

### FACTS

Having in mind the rule that we must accept the evidence, and the reasonable inferences therefrom, most favorable to defendants, the facts appear as herein set forth.

The accident occurred about 9 p.m., November 28, 1947, on the Pacheco Pass Road about 2.5 miles east of Gilroy. The night was dark and moonless, and a light mist was falling, coating the windshield and dampening the road surface. The road makes a 103 degree change in direction from generally southeast to northeast. Instead of making the turn, it is possible, when approaching the curve from either direction, to continue straight ahead onto lesser blacktop extensions. These extensions, one of which is Frazier Lake Road and the other an anonymous cutoff, intersect at a point some 100 feet south of the curve, and with it, in effect, form an inverted triangle—the apex (intersection) being at the bottom and

the base (the curve of the Pacheco Pass Road, where the accident occurred) at the top. Within the triangle is a clear, level, graveled area which cars may cross. These extensions are unmarked, paved country lanes.

Fred and Ray and a man named Fulk had dinner at Redwood City. There was some confusion in the evidence as to the drinking by the party, although Fred testified he had only two beers. As they approached the scene of the accident from the west, Fred was driving, Ray sitting alongside him. Fulk sat on the rear floor, the back seat having been removed to facilitate the carriage of furniture on the return trip. Fulk was drinking whisky from a bottle and there was an open case of beer alongside him. The windshield wiper was not going at the time of the accident, although Fred had turned it on and off from time to time.

Plaintiffs testified that their headlights through the precipitation picked out the broken white line which divided the two opposing lanes. From some 200 feet to the front there was a sweep of lights as defendants' truck swung into the curve from the opposite direction. When it was within 50 to 60 feet, plaintiffs could see that the truck's left rear wheels were 3 to 12 inches across the white line, and sliding. Fred pulled the Terraplane to his right and set the brakes just as the truck's big duals caught the left front of the car. The truck axle broke and the duals spun off the road. The back of the moving van dropped to the roadway and the truck dragged 300 feet around the curve before parking. The Terraplane came to rest on the south shoulder of the road facing northeast, in the original direction of travel.

Defendant Newton's testimony varied materially from that of plaintiffs. He was driving the truck westerly and saw no lights as he approached or came around the curve. His 1947 International, consisting of a tractor and semitrailer, was approximately 35 feet in length. He was rounding the curve on his own side of the road at an estimated speed of between 30 and 35 miles per hour when, as he told the investigating officer immediately after the accident, "something hit" him "from the rear." The rear of the trailer immediately dropped down. He pulled on ahead so as to clear the curve before parking. Examination of the truck revealed that the collision had broken the trailer axles, knocked off the left rear duals, and bent the side immediately above the wheels. There were no scraping or sideswiping marks or damage in front of the rear duals. Newton walked back around

the curve and found plaintiffs' wrecked car on the south shoulder of the highway, facing northeast. Newton saw tire marks coming onto the highway from the graveled area and leading to a gouge mark on his side of the highway, which was the point where he claimed that his semitrailer fell. These tire marks ran completely across the graveled area and were 25 or 30 feet in length. Later, Murie, the highway patrolman called by plaintiffs, testified he saw these same tire marks coming in at a 45-degree angle from the graveled area. He said they were about 45 feet in length but due to other marks of travel (there were other vehicles parked at the scene of the accident when he arrived) he could not tie them up with a continuous line into the scene of the accident. Murie testified that the gouge mark in the paving was 4 inches north of the white line (the truck's side) and about 11 feet ahead of where the car rested. He found another gouge mark, also on the truck's side of the highway, about 4 feet ahead of plaintiffs' car.

The report of Highway Patrolman Murie of the accident was read without objection. This listed the accident not as a sideswipe, as contended by plaintiffs, but "from the nature of damage to" plaintiffs' car "almost front or right angle impact with left rear dual of trailer together with tire marks on to roadway from southwest shoulder. It is our opinion that this vehicle may have come into the curve too fast and in trying to come back on to roadway, hit the rear of the trailer at almost right angles." (The report also stated that Fred "had been drinking, not known if ability impaired.") It also gave the cause of the accident as "improper passing" by plaintiffs' car.

An examination of the photographs and map in evidence indicates that, under the circumstances of the case, this theory is reasonably probable. Driving around the curve in question from the west, as did plaintiffs, the driver would come on a wide area of paved roadway. Unless he followed the white line closely or if he was driving fast, his tendency would be to go straight ahead into Frazier Lake Road or into the triangular graveled area instead of curving to the left with the Pacheco Pass highway. This would account for Newton's failure to see plaintiffs' headlights as they would be shining down Frazier Lake Road and away from Newton as he came around the curve from the east. A driver having entered the Frazier Lake Road, or the triangular graveled area, and discovering his error, would have to swing left onto the

graveled shoulder between the road and the south side of the highway and thence onto the macadam of the highway. The evidence indicates that that is what plaintiffs did, but that in getting back onto the highway they ran across the white line, striking defendants' truck on the left rear of the semi-trailer. Likewise, if plaintiffs did not make their turn to the left until their car was about opposite the semitrailer, their headlights might not be visible to the driver ahead in the tractor, whose eyes should be on the curve around which he was going. The semitrailer was struck approximately 4 feet from the back of the trailer and about 25 feet back of the driver's compartment. We thus have a case in which the plaintiffs testified that they were traveling on their right side of the road, and the rear of the defendants' truck came across the white line and sideswiped their car,—and in which defendant Newton testified that he was driving on his right side of the road and plaintiffs' car came across the white line and struck his semitrailer. The trial court believed Newton. Moreover, the highway patrolman's testimony supported Newton. As there was a conflict in the evidence, we must accept the court's determination, unless plaintiffs can demonstrate that defendants' evidence is inherently improbable. This brings us to plaintiffs' contention that the physical facts demonstrate this improbability.

## PHYSICAL FACTS

1. Plaintiffs contend that Newton's failure to see the lights of plaintiffs' car demonstrates that he was not driving in a prudent manner. As herein shown, this failure was explainable under the circumstances of the case. Moreover, an inference could reasonably be drawn that plaintiffs' lights were not on or were, at least, defective. Both plaintiffs testified that they had had considerable difficulty with their headlights, stopping several times between Redwood City and San Jose to fix them. It is true that they testified that they had no trouble with them after leaving San Jose. However, they stopped in San Jose for a flashlight. They explained they wanted it for another purpose. Fred made a statement of some significance on this question. He was asked if as he came along the straightaway just before entering the curve his lights did not show down Frazier Lake Road. He replied, "They should, but you couldn't see anything at night." He was then asked, "Q. You mean to say your lights were, such as your car is, on the straightway the lights don't show straight ahead of you? A. For a second or so."

■ 2. Defendants' truck traveled 315 feet on a level road, with the rear wheel dragging, after it was struck. Defendant Newton testified, however, that he purposely drove it that far in order to get it off the curve so that it would not be a menace to traffic. The trial court obviously believed this explanation, and not plaintiffs' argument that it was going so fast it could not be stopped within that distance.

■ 3. Plaintiffs' car was located on the south shoulder of the highway, headed in its original direction and in such condition, say plaintiffs, that it could not have moved under its own power more than a foot or two after the impact. Its left front was badly smashed. Plaintiffs contend that the fact that the car was on the shoulder after the accident conclusively shows it must have been there when hit. Against this contention is the testimony of Newton as to where the accident occurred and the gouge marks and tire marks. One was approximately 4 feet and the other 11 feet ahead of where plaintiffs' car rested, and both were on the north (or defendants') side of the highway. From the former, a mark extended all the way to defendants' truck. A reasonable inference is that the first mark was made by the truck's broken axle, and the second by the trailer dropping to the pavement. Plaintiffs claim that if these marks indicate these things it would be physically impossible for their car to end up 4 and 11 feet, respectively, behind these marks. It is impossible to tell what would happen when these vehicles came together, and it is neither impossible nor improbable for plaintiffs' car to have struck the semitrailer on the north side of the center line and to be hurled back of the point of impact. It must be remembered that the force of the collision was sufficient to knock off the duals and break the trailer axle, and bend the side immediately above the wheels. Likewise, the damage to plaintiffs' car was considerable, "the whole front end pushed the motor back and the left front wheel was torn off entirely." Fred also testified that the damage was to the left front part of his car. The damage was not such as would come from a sideswipe but was such as would occur if the left front of plaintiffs' car struck the trailer on an angle. Plaintiffs testified that they were approaching the truck parallel, and that when they saw the dual wheels skidding toward them the driver turned the car to the right. It is impossible to reconcile this statement with the condition of the car after the accident. Plaintiffs' contention that their car could not have been knocked to the shoulder by the truck is a

bit difficult to reconcile with their own version of the accident. Fred testified that the duals, when they struck his car, were from 3 inches to a foot on his side of the white line, and although he was knocked unconscious for a second he thinks his car did not move after being struck. Obviously, when it came to rest it was not on the highway within 3 inches to a foot from the white line. Whatever would have forced it to the shoulder from the position where he claims it was, could have forced it likewise to the shoulder from a point 4 inches the other side of the white line. Moreover, there were tire marks across the graveled area which support the patrolman's and the trial court's theory that plaintiffs came from that direction. Some portions of these marks were obliterated by later travel but there were sufficient left to support the court's conclusion that that was where plaintiffs' car came from. Plaintiffs' main contention is predicated entirely upon the physical impossibility of the Terraplane's being where it was found by the witnesses if the accident had occurred as asserted by defendants. No such impossibility appears. The reports are replete with automobile accident cases in which one of the parties seeks to establish from the condition and position of the cars after the accident, considered in the light of common experience, mathematics, or the laws of physics, that the accident could not possibly have occurred as the trier of the fact has concluded. ''. . . such arguments are unreliable because they fail to take into account the human element, what may have been done by the respective drivers, and because of the many uncertainties which necessarily exist in such matters as the respective weights of the cars, the respective speeds, the exact positions, the force and direction of the blows, and many other elements.'' (*Nagamatsu* v. *Roher,* 10 Cal.App.2d 752, 755 [53 P.2d 174] [and cases cited]; see, also, *Siegell* v. *York,* 84 Cal.App.2d 383, 387 [191 P.2d 50].) As stated in *Hawthorne* v. *Gunn,* 123 Cal. App. 452, at page 455 [11 P.2d 411]: ''Perhaps there is nothing more certain about an automobile accident than the fact that the visible results afterward are not an infallible guide in determining what occurred.''

4. Much of plaintiffs' contention is based upon the assumption that the facts were as testified by the occupants of plaintiffs' car. The trial judge obviously did not believe them. In his opinion he said: ''Plaintiffs and their passenger in their testimony were somewhat vague and conflicting as to matters in which they might be expected to be more posi-

tive which may be accounted for by the fact of their admitted drinking of beer and whiskey both before and during their 2½ [hour] drive to the place where the collision occurred." Plaintiffs contend that their testimony was neither vague nor conflicting. A reading of the record supports the judge's conclusion in this respect. Moreover, the highway patrolman, who was called as plaintiffs' witness, corroborated defendant Newton.

This is another case in which the trier of the facts, having seen the witnesses testify, is in a much better position to determine their credibility than we, and where the physical facts support defendants' version of the accident at least as much if not more than plaintiffs' version.

The judgment is affirmed.

Peters, P. J., and Wood (Fred B.), J., concurred.