[Civ. No. 800.   Fourth Appellate District.—October 21, 1932.]

GEORGE K. ANDERSON, Respondent, v. W. F. OTT et al.,
Appellants.

Christian Hoeppner, Wakefield & Hansen and B. M. Benson for Appellants.

Theodore M. Stuart for Respondent.

BARNARD, P. J.—This is an action for damages for injuries received on September 5, 1930, in a collision between two automobiles at the intersection of two public highways. The plaintiff was riding in the rear seat of an automobile driven by the defendant Ott, which was proceeding easterly on Washington Avenue, in Fresno County. Another machine, owned by the defendant Stokes and in which he was riding, but driven by defendant McDearmid, was proceeding south on Cherry Avenue. The two machines met near the center of the intersection of these highways, the Stokes car hitting the Ott car nearly opposite the rear seat thereof. This action was tried on January 7, 1932, and resulted in a verdict in favor of the plaintiff against

all of the defendants as joint tort-feasors, the liability of Stokes for any negligence on the part of McDearmid having been expressly admitted. From the ensuing judgment one appeal has been taken by the defendants Stokes and McDearmid and a separate appeal by the defendant Ott.

We will first consider the appeal of Ott. The case was tried upon the theory that the respondent was the guest of this appellant and that under section 141¾ of the California Vehicle Act, as adopted in 1929, gross negligence upon his part must be proven. His first contention is that the evidence is not sufficient in this respect to support the verdict. He relies upon the respondent's testimony that Ott was driving along about forty miles an hour; that there was nothing about his driving that frightened the respondent; that the respondent continued his conversation with two ladies in the rear seat of the automobile; that he did not see the other car until they were within sixty feet of the center of the intersection; and that the first time he realized there was any danger was when one of the ladies screamed. He also relies upon his own testimony that he was about seventy feet from the center of the intersection when he first saw the other car; that this other car was then about one hundred or one hundred and twenty feet from the center of the intersection; that the other car was about fifty feet further from the center of the intersection than he was; that he was proceeding at twenty or twenty-five or thirty miles an hour; and that he accelerated his speed and thought he could cross the intersection ahead of the other car. It is argued that there was nothing about the operation of this automobile which caused the respondent any apprehension or anxiety; that this appellant had a right to assume that the driver of the other car would slacken his speed and permit him to pass; and that "in an abundance of caution he increased his speed to thirty-five miles an hour so as to make the passing that much safer". These facts, it is urged, establish, as a matter of law, that this appellant may not be held to have been indifferent to the safety and welfare of his passengers.

On the other hand, the evidence shows without contradiction that the intersection in question is what is known as a "blind corner", due to the presence of a Thompson vineyard. Ott himself testified: "I knew I was coming to

an intersection. Until I reached the seventy-foot mark I did not see any vehicle at all. The vineyard obstructed my view, and this obstruction was so great I could not see the McDearmid car until I did see it.'' He further testified that when he first saw the other car he was about seventy feet from the center of the intersection and the other car was about fifty feet further away; that he had been proceeding at from twenty to thirty miles per hour but accelerated his speed and picked up to possibly thirty-five miles an hour; that when he first saw the other car it was approaching at about forty miles an hour; that when he saw the other car he immediately speeded up; that ''I figured that he would slow up when he saw—when I was in the intersection''; that ''I figured I could beat him across''; and that ''he was going at least forty miles an hour when he hit me''.

In *Krause* v. *Rarity,* 210 Cal. 644 [293 Pac. 62, 66, 77 A. L. R. 1327], the court said: ''Where liability attaches only for gross negligence it is for the jury, under proper instructions by the court, to pass upon the question whether such negligence exists. (*Merrill* v. *Pacific Transfer Co.,* 131 Cal. 582 [63 Pac. 915]; 19 Cal. Jur., p. 728.)''

In defining gross negligence, the court in that case further said: ''The term 'gross negligence' has been defined as 'the want of slight diligence', as 'an entire failure to exercise care, or the exercise of so slight a degree of care as to justify the belief that there was an indifference to the things and welfare of others', and as 'that want of care which would raise a presumption of the conscious indifference to consequences'.''

In *Malone* v. *Clemow,* 111 Cal. App. 13 [295 Pac. 70, 72], we find the following: ''Appellants argue that some act of wilfulness or wantonness must be shown to constitute gross negligence; or, in other words, that *either wilfulness or wantonness is a necessary element of gross negligence.* It is clear from the foregoing authorities that this is not correct, for whenever the element of *knowledge and wilfulness* enters into the act, *it ceases to be negligence,* and becomes at least 'willful misconduct', and this is true no matter what degree of negligence is being considered.''

While there is much other evidence in the record tending to show a high degree of negligence on the part of this

appellant, the portion referred to is sufficient to support the verdict of the jury (*Meighan* v. *Baker*, 119 Cal. App. 582 [6 Pac. (2d) 1015]; *Kastel* v. *Stieber*, 215 Cal. 37 [8 Pac. (2d) 474]).

It is next argued in behalf of appellant Ott that the respondent, as his guest, could not recover as against him on proof of gross negligence. The contention is that the amendment of section 141¾ of the California Vehicle Act which went into effect August 14, 1931, omitting the words "or gross negligence" from the act, applied to this case and placed upon the respondent guest the burden of proving either wilful misconduct or intoxication, since the action was not tried until after that amendment went into effect, although the accident occurred and the suit was filed prior to that time.

It is first insisted that the 1931 amendment to this act created merely a change in the rules of evidence, and is therefore applicable to all trials occurring after its adoption, regardless of when the cause of action arose. In support of this contention this appellant relies upon the following cases: *James* v. *Oakland Traction Co.*, 10 Cal. App. 785 [103 Pac. 1082, 1087], *Estate of Patterson*, 155 Cal. 626 [102 Pac. 941, 132 Am. St. Rep. 116, 18 Ann. Cas. 625, 26 L. R. A. (N. S.) 654], and *Krause* v. *Rarity*, 210 Cal. 644 [293 Pac. 62, 77 A. L. R. 1327]. The cases relied on, however, point out the distinction between mere changes in rules of evidence and changes affecting the substantive rights of litigants. In *James* v. *Oakland Traction Co.*, the court said:

"No one will question the right of the legislature to change or modify the remedy and prescribe rules of evidence, if such legislation does not have the effect of creating a new obligation, or of attaching a new disability, retrospectively; but, as is well said in *Hope Mutual Ins. Co.* v. *Flynn*, 38 Mo. 483 [90 Am. Dec. 440], 'it is not within the constitutional competency of the legislature to annul by statute any legal ground on which a previous action is founded, or to create a new bar by which said action may be defeated'."

In discussing an amendment affecting the particular question of negligence before it, the court in that case further said:

"Clearly, we think, the provision of section 501 of the Civil Code fixing the maximum rate of speed of street-cars when traveling over the streets of a city is more than a rule of evidence—it is a rule of property, for a *vested right* is property whatever may be the nature or condition of the object of such right—that is to say, that 'a vested right of action is "property" in the same sense in which tangible things are property, and is equally protected against arbitrary interference'. (Cooley's Constitutional Limitations, 4th ed., p. 449.) Of course, a distinction is to be observed between the *right of action* and the *remedy,* for the right to a particular remedy is not a vested right unless the destruction of the remedy necessarily operates to destroy the right of action, in which case an act abrogating the remedy could not, obviously, have a retroactive effect.

"All the judicial law to which our attention has been directed very clearly points out the distinction between those cases in which the repeal involved only some rule of procedure in no way materially affecting contractual rights, or the essential remedy for the enforcement of such rights, and those cases where the repeal or the amendment either necessarily destroyed the only possible remedy by which rights could be restored or wrongs redressed or had the effect of directly impairing the obligations of a contract. As is said in *Williams* v. *Johnson,* 30 Md. 500 [96 Am. Dec. 616], in passing upon a proposition analogous to the one under discussion here: 'It would be extending this opinion to an unnecessary length to review in detail the many authorities relied upon by the counsel for the appellee. It is sufficient to say that upon examination they will be found to be cases arising upon penal statutes, where it was held that the action was defeated by the repeal of the law; or where a statute conferring an executory right was repealed before the right became executed; or where it was held that the remedy, procedure and even the statute of limitation, may be changed or modified without impairing the right of action or the obligation of the contract. But no case can be found in which it has been held that a right of action, founded upon the municipal law of a country, is defeated by change or abrogation of the law.

" 'Apart from this view, it is a sound rule of construction, founded in the wisdom of the common law, that whenever a statute is susceptible, without doing violence to its express terms, of being understood, either prospectively or retrospectively, courts of justice invariably adopted the former construction. A statute ought not to have a retroactive operation, unless its words are so clear, strong, and imperative that no other meaning can be annexed to them, or unless the intention of the legislature could not be otherwise satisfied; and especially ought this rule to be adhered to when such a construction would alter the pre-existing situation of parties, or would affect or interfere with their antecedent rights.'

"As we have declared, and as is plainly obvious, the action here is not one the authority for which is to be found in the section of the code under consideration, for, as seen, the moment the accident occurred and the plaintiff was thereby injured, there vested in her, *eo instanti*, a right of action against the defendant which it was not within the power of the legislature to destroy. Nor is the action upon an executory right yet uncrystallized into an executed one, and neither is the proposition one involving merely the modification or a change in the remedy or procedure."

In *Estate of Patterson, supra,* it was held that the amendment there in question was one which related wholly to what should be done upon the trial and, therefore, the amendment applied to all trials held after its adoption. In the case before us, which was tried upon the theory of gross negligence upon the part of this appellant, the 1931 amendment to the act in question, if applicable, would work not merely a change in the rule of evidence but would result in a destruction of this portion of the respondent's right of action, which is exactly what this appellant contends has occurred. We find nothing in the case of *Krause* v. *Rarity, supra,* which upholds the view thus contended for.

As a second proposition in this regard, this appellant contends that in the case of *Krause* v. *Rarity, supra,* it was held that the cause of action would have been wiped out by the 1929 amendment to section 141¾ of the California Vehicle Act except for the inclusion in that amendment of the proviso that a guest might recover upon proof of gross

negligence, among other things, and since the question of gross negligence was eliminated by the amendment of 1931, the respondent's cause of action, based upon gross negligence, has been wiped out by the repeal of that portion of section 141¾ on which it was founded. The respondent's cause of action was not founded upon section 141¾, as adopted in 1929, but was grounded on a common-law liability, long existing, and preserved and continued by that section. While the cause of action of *Krause* v. *Rarity, supra*, was one not existing at common-law, the court, in referring to such a situation as the one now before us, there said:

"If the present action were one brought by Krause, during his lifetime, for damages for personal injuries inflicted upon him while a guest of the defendant Rarity, such a cause of action would be one grounded on the common-law liability and the right of action would be vested right and survive a repeal of the statute. (*Callet* v. *Alioto*, 210 Cal. 65 [290 Pac. 438].) The case of *James* v. *Oakland Traction Co., supra*, relied upon by the plaintiff, was one for damages for personal injuries inflicted upon the plaintiff therein.

"That case is illustrative of the numerous decisions holding that upon the wrongful infliction of the injury a vested right accrues to the party injured freed from any disturbance by subsequent legislative enactment."

In *Callet* v. *Alioto, supra*, in speaking of the rule that a cause of action or remedy dependent on a statute falls with the repeal of the statute, even after an action thereon is pending, in the absence of a saving clause in the repealing statute, the court said:

"This rule only applies when the right in question is a statutory right and does not apply to an existing right of action which has accrued to a person under the rules of the common law. In such a case, it is generally stated, that the cause of action is a vested property right which may not be impaired by legislation. In other words, the repeal of such a statute or of such a right, should not be construed to affect existing causes of action."

We think the authorities referred to sufficiently distinguish this case from those cases in which the rule now contended for by this appellant is to be applied, and that the 1931 amendment to this statute had no effect upon this case.

Taking up the appeal of Stokes and McDearmid, their first contention is that there is no evidence to support a verdict as against them, because the physical facts prove to a point of absolute demonstration that the car occupied by them was not being driven at a negligent rate of speed. While it is conceded that a number of witnesses testified that this car was traveling at an illegal and excessive rate of speed at the time of the collision, it is urged that this testimony must be utterly disregarded because two photographs appearing in the record and picturing the condition after the accident of the two cars involved therein furnished an absolute demonstration that the car occupied by these appellants could not have been driven even at ten miles an hour at the time of the impact. The frailty of reliance upon physical facts as overcoming other evidence and conclusively establishing what has occurred in an automobile collision has been frequently pointed out (*Fishman* v. *Silva,* 116 Cal. App. 1 [2 Pac. (2d) 473]; *Johnston* v. *Peairs,* 116 Cal. App. 1 [2 Pac. (2d) 473]; *Holt* v. *Yellow Cab Co.,* 124 Cal. App. 385 [12 Pac. (2d) 472]; *Hawthorne* v. *Gunn,* 123 Cal. App. 452 [11 Pac. (2d) 411]). In the last case cited this court said: "Perhaps there is nothing more certain about an automobile accident than the fact that the visible results afterward are not an infallible guide in determining what occurred." A further consideration in this case is that, after a careful inspection of the photographs referred to, we regard them as not even conflicting with, much less overcoming, the testimony we are asked to disregard. In addition, there is evidence of other physical facts having an important bearing. There is evidence that the McDearmid car continued after the impact for a distance of some sixty feet, running off the road into the dirt, and that the force of the impact was sufficient to swing the Ott car in a complete circle within the intersection, throwing Mrs. Ott from the front seat to the ground. The force of the impact is further indicated by the fact that, although not thrown from his seat, the respondent received five distinct fractures of the bones in the pelvic region of his body, a broken collar-bone and a broken rib, and that each of the two ladies seated with him on the rear seat also suffered broken bones. It cannot be held, as a matter of law, that the car occupied by these appellants was not

being driven at a rate of speed sufficient to constitute negligence.

It is urged that the court erred in refusing to permit these appellants to impeach the testimony of two witnesses for the respondent. These witnesses were the two ladies who, with the respondent, occupied the rear seat of the automobile and who had been injured in the same accident. It appears that each of these ladies had filed suit against these appellants for damages for injuries received in this same collision. Having been called as witnesses by the respondent, they testified that Ott was going somewhere between twenty-five and thirty miles an hour. The record shows that the respondent then attempted to impeach this portion of their testimony by offering in evidence the complaints filed by these witnesses in their actions against these appellants, upon the theory that these complaints contained statements inconsistent with their testimony concerning Ott's speed. It appeared that these complaints were neither signed nor verified by the respective plaintiffs and upon that ground the court sustained an objection by Ott and refused to admit either the complaints or the judgment-rolls in evidence. These appellants joined in the efforts made by the respondent to have these complaints introduced in evidence, and also made other efforts to have the same introduced, without success. Assuming, but by no means deciding, that these rulings of the court were erroneous, it does not follow that the judgment must be reversed. The only argument made is that the complaints were verified by the attorney for the respective parties; that each witness had testified that she had discussed with her attorney the circumstances of the accident and told him what had happened; that it will be presumed that the attorney incorporated in the complaints such statements of facts as had been made to him, and that these appellants were entitled to impeach each of these witnesses by showing that her complaint contained statements contrary to her present testimony. It is incumbent upon an appellant claiming error to produce the necessary record to show the same. Our attention is not called to these complaints in the record and we are unable to find them there. Nothing appears as to what statements were contained in the complaints and we are unable to determine whether or not they vary from

the statements made by the witnesses on the stand. It would appear from reading this portion of the transcript that the respondent considered the statements made on the witness-stand as more favorable to the appellant Ott than the statements made in these complaints. Even if the testimony as given on the stand was more favorable to Ott than the statements made in the complaints, that testimony still showed negligence on the part of Ott, the jury brought in a verdict against him upon ample evidence, the evidence excluded was sought to be introduced by the respondent, the same was kept out only by objection of a co-defendant, and we do not see how the error, if any, can be charged to the respondent. In *Crabbe* v. *Rhoades,* 101 Cal. App. 503 [282 Pac. 10, 18], it was said:

" . . . it is clear that the liability of appellant . . . depended entirely upon the answer to the questions whether he himself was or was not negligent, and whether or not such negligence, if it existed, proximately caused or contributed to the injuries complained of. These questions are wholly independent of the question as to whether or not his codefendant . . . was also liable."

In *Johnston* v. *Peairs,* 117 Cal. App. 208 [3 Pac. (2d) 617, 619], this court said: "It is well settled that an appellant may not complain of errors as between himself and such a joint defendant, if they are not such as to affect in an important manner his relations to the plaintiff." There is ample evidence in the record of negligence upon the part of these appellants, and although the exact nature of the statements contained in these complaints does not appear, a reading of the transcript does not indicate any possibility that the exclusion of this evidence could have affected the result, so far as the respondent is concerned.

The last point raised is that after the respondent had been permitted to testify as to his income during the various years, the court refused to permit these appellants to cross-examine him as to what part of this income was gross and what part was net. An objection to this line of questioning was sustained on the ground that any recovery on account of lost earnings is to be measured by lost earning capacity rather than lost net profit. However, it appears that these appellants later recalled the respondent for further cross-examination and went fully into these

matters without objection, at which time the respondent testified as to his net earnings during the years in question. No question is raised as to the verdict being excessive and no showing is made that the entire verdict could not be amply sustained by the evidence in reference to other elements included therein. Upon the showing made we are unable to hold that any prejudicial error appears.

The judgment is affirmed.

Jennings, J., and Marks, J., concurred.