[Civ. No. 1460. Fourth Appellate District.—December 20, 1935.]

S. NAGAMATSU, Respondent, v. H. C. ROHER, Appellant.

Irving E. Read and Walter F. Keen for Appellant.

J. Marion Wright for Respondent.

BARNARD, P. J.—This is an action to recover for the death of a son of the plaintiff who was killed in a collision between an automobile driven by the deceased and another automobile driven by the defendant. The accident occurred at the intersection of Smeltzer Avenue and Cannery Street, in Orange County, about 6:30 P. M. on October 22, 1931. Cannery Street runs north and south and Smeltzer Avenue east and west. There was an unobstructed view in all directions at this intersection but it was dark at the time the accident occurred. The deceased was driving north on Cannery Street

and the defendant was driving east on Smeltzer Avenue. The two cars met near the center of the intersection and came to rest in a ditch seven or eight feet deep which runs parallel to Cannery Street, near its easterly edge. The car driven by the deceased was upside down in this ditch, about opposite the north line of Smeltzer Avenue, and the car driven by the defendant was standing on its radiator in the ditch about 35 or 40 feet north of the other car. The jury returned a verdict in favor of the plaintiff and from the judgment entered the defendant has appealed.

It is first contended that the evidence is not sufficient to sustain the verdict because the evidence for the respondent is so improbable that it cannot be believed and because the so-called physical facts, "backed up by the law of physics", clearly demonstrate that the accident occurred because of the negligence of the deceased.

Considering first the claimed improbability of the respondent's evidence. It is first argued that the respondent's testimony, to the effect that he saw the appellant's automobile coming from the west when it was a certain distance away, cannot be believed because the respondent also testified that he could only see a much shorter distance in front of the automobile in which he was riding. We see nothing unusual in the fact that the lights of another car approaching on a crossroad can be seen at a much greater distance than that at which objects may be distinguished by the aid of headlights on the car in which the observer is riding. It is further argued that the respondent testified that when his son's car, going 15 miles an hour, entered the intersection he saw the appellant's car about 200 feet west of the intersection, that it thus appears that the respondent's car would travel 12 feet while the appellant's car traveled 209 feet, and that to do this the appellant's car would have had to travel at a speed of approximately 270 miles an hour, which is obviously impossible. Such arguments, frequently made in such cases as this, are of small value because of the many uncertainties in the premises which are assumed. This is well illustrated here. It is in evidence that there was an 18-foot pavement on each of these streets. The appellant assumes that the impact occurred on the exact center line of Smeltzer Avenue and, therefore, assumes that the respondent's car traveled nine feet on that pavement. For some reason he assumes that this car traveled

an additional three feet. The entire width of Smeltzer Avenue does not appear in the evidence. Assuming it is one of the 60-foot streets there would be 30 feet between the beginning of the intersection and the center line of that street. There is testimony that the impact occurred north of the center line of Smeltzer Avenue and in the northeast corner of the intersection. The impact may have taken place several feet north of this center line and since the witnesses' testimony was only an estimate an allowance of several feet at least should be made for the position of the respondent's car when he says he was entering the intersection. Again, there is no possibility of mathematical exactness in such testimony as to the position and speed of another car. As is well known, such estimates of speed and distance are only approximations and in the nature of things could not be exact. For example, the witnesses here testified as to how many telephone poles, respectively, the two cars were from the intersection when the occupants of the deceased's car observed the other car. They then estimated that the telephone poles were about 100 feet apart although it developed that they were, in fact, 150 feet apart. Allowing for the same natural error on the part of the witnesses in estimating how far the appellant's car was from the intersection at the time they entered it, that car would have been about 133 feet west of the intersection instead of 200 feet. As indicated above, the distance traveled by the deceased's car may well have been nearer 40 feet than 12 feet. All of the witnesses expressed an inability to give the distances and speeds exactly. Under such circumstances, the testimony in question is not so improbable as is claimed. There was other testimony which more directly supported the verdict and the most that can be said is that there was some conflict in the evidence.

It is argued that the condition and position of the cars after the accident, with the laws of physics, conclusively prove that the car driven by the deceased was going much faster than the other car and that it struck the appellant's car, knocking it some distance to the north. As has been frequently pointed out in cases of this nature such arguments are unreliable because they fail to take into account the human element, what may have been done by the respective drivers, and because of the many uncertainties which necessarily exist in such matters as the respective weights of the cars, the re-

spective speeds, the exact positions, the force and direction of the blows, and many other elements. (*Fishman* v. *Silva,* 116 Cal. App. 1 [2 Pac. (2d) 473]; *Johnston* v. *Peairs,* 117 Cal. App. 208 [3 Pac. (2d) 617]; *Holt* v. *Yellow Cab Co.,* 124 Cal. App. 385 [12 Pac. (2d) 472]; *Anderson* v. *Ott,* 127 Cal. App. 122 [15 Pac. (2d) 526]; *Hawthorne* v. *Gunn,* 123 Cal. App. 452 [11 Pac. (2d) 411].) In the last case cited this court said: "Perhaps there is nothing more certain about an automobile accident than the fact that the visible results afterward are not an infallible guide in determining what occurred." This is peculiarly true in the instant case for an additional reason. The one car was found upside down in a deep ditch after having passed through the railing of a bridge and the other car was standing on its front end in the same ditch. It is impossible to tell from the condition of the cars, the main physical evidence relied upon, what part thereof resulted from the collision and what part from the fall.

It is next urged that the respondent's attorney committed reversible error in asking a question because the answer thereto may have disclosed to the jury that an insurance company was involved. A garage man testified that he superintended the repair of the appellant's car and as to its condition. On cross-examination the respondent's attorney asked this witness who had requested him to make an estimate on the cost of repairing the car. He replied that he had been asked to do so by Mr. Read, the appellant's attorney. He was then asked "Who else?" and he replied: "The Auto Club." Being then asked if he repaired the car at the request of the Auto Club of Southern California he replied in the affirmative. Immediately thereafter, in the absence of the jury, appellant's counsel asked the court to declare a mistrial. This request was denied and after the jury was brought back the court struck out the testimony relating to the automobile club and instructed the jury to disregard the same. There was no direct reference to an insurance company and the auto club in question performs many functions besides the writing of insurance. Even the reference to this club was brought out incidentally, the matter was not repeated, and we think no such intentional violation of the rule appears as would require a reversal. Under these circumstances, the action of the court in striking out the testimony and admonishing the jury to disregard the same was a sufficient protection of the appellant's rights.

█ The final contention is that the court erred in refusing three instructions offered by the appellant. The first of these, apparently based upon the appellant's theory that the physical facts were controlling, instructed the jury to take into consideration the physical facts, many of which are particularly mentioned. The instruction was argumentative, mentioned facts not in evidence, and invited the jury to take into consideration "your own experiences in life". Not only was this instruction properly refused but the court, in other instructions, told the jury to consider all of the evidence and the inferences which might be deduced therefrom.

█ The second of these instructions was to the effect that if the jury believed that the appellant reached the intersection first he had the right of way and it was then the duty of the deceased to yield such right of way. The instruction was not complete in that it failed to cover the situation in the event the cars entered the intersection at the same time. The appellant claims that he was entitled to this instruction in support of his theory that he entered the intersection first. The fact remains that there was no evidence to support that theory. We have carefully gone over the evidence and can find none that would even justify the inference that he entered the intersection first. █ The third instruction complained of was to the effect that if the jury believed the deceased was driving without his headlights burning and that this proximately contributed to the accident, the respondent could not recover. The court covered this matter in its other instructions by reading to the jury section 99 of the California Vehicle Act. With respect to the last two instructions mentioned it may also be said that the court gave full and complete instructions with respect to the matter of contributory negligence on the part of the deceased.

We find no reversible error and the judgment appealed from is affirmed.

Marks, J., and Jennings, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on February 17, 1936.