[Civ. No. 5306. Fourth Dist. May 23, 1956.]

BARTOLO NAPOLI, Respondent, v. ELEANOR HUNT, Appellant.

Hansen, McCormick, Barstow & Sheppard for Appellant.

David E. Peckinpah, Denver C. Peckinpah and Louis W. Caporale, Jr., for Respondent.

MUSSELL, J.—This is an action for damages for personal injuries sustained by plaintiff in a collision of automobiles at a rural intersection and the sole question involved in this appeal is whether the evidence is sufficient to support the findings and judgment in favor of the plaintiff.

The collision occurred at approximately 7:45 a. m. on May 25, 1954, and the point of impact was established as being in the southwest quadrant of the intersection of Belmont Avenue and Grantland Street in Fresno County. Belmont Avenue runs east and west and intersects Grantland Street at right angles. Both streets are paved and at the time of the accident there were no stop signs on either street at the intersection. It was an open intersection and, while there was a growth of

wheat or oats on the northwest corner, the grain was not high enough to obstruct the view of the drivers of the two cars involved. Belmont Avenue is 21 feet wide with a broken white line down the center and Grantland Street is 15 feet wide and is not divided by a white line. The weather was clear and both streets were dry. The intersection was in a 55-mile an hour prima facie speed zone.

Plaintiff was driving a 1953 Buick sedan in an easterly direction in the south traffic lane on Belmont Avenue and defendant was driving south on Grantland Street in her 1951 Chevrolet sedan. Plaintiff was on his way to work and defendant was on her way to school, where she was employed as a teacher. Betty Ruth Doerksen, another teacher, was riding with her at the time. Both plaintiff and defendant were familiar with the intersection involved. The Buick left skid marks on the pavement, measuring 42 feet leading to the point of impact and extending therefrom an additional 39 feet in a southeasterly direction. There were no skid marks left by the Chevrolet. It traveled approximately 55 feet after the impact.

A traffic officer, who arrived at the scene within a few minutes after the accident happened, spoke to both plaintiff and defendant. Plaintiff told him that he was going east on Belmont at about 50 miles per hour and did not see the other car. When questioned about the brake marks left by his Buick, he told the officer, ''If it was his brake marks he must have put on his brakes, but he didn't remember it. He was very, very vague.''

Plaintiff suffered severe brain damage in the collision. The medical testimony at the trial was that ''He had a so-called subdural hematoma, which is a collection of blood or fluid, or both, located in a space between the brain and the dura, which is the tough covering over the brain which separates it from the skull.'' Surgery was performed three or four weeks after the accident to relieve the pressure on the brain by removing and draining the blood from the congested area, and it was found that plaintiff's brain was depressed downward about one inch.

Plaintiff testified at the trial and upon being asked what he remembered about the accident, stated, ''Well, clearly, I remember standing beside my car, a little distance from the car, within an arm's reach, I think, and I was looking down at the two ladies that were on the ground and the first thing I was trying to, I was struggling mentally to piece the picture

together, just what was before me, how I was there and how the ladies were there. It was almost impossible to put together immediately. I couldn't understand at the time why it was such a puzzle, but it was something important for me to figure out. That's the first thing I recall, trying to piece the picture together''; that he remembered talking to the highway patrol officer and remembered that he could not figure out the reason for the skid marks; that he had not recalled putting on the brakes.

The defendant told the officer at the scene that ''she hadn't seen any car''; that they ''had stopped at the stop sign and started out when they were struck.'' However, at that time there was no stop sign at the intersection. Defendant failed to appear at the trial, after having been served with a subpoena, and it was stipulated that her deposition be used in lieu of her appearance and testimony in court. In her deposition she stated, on being asked as to the last thing she remembered prior to the accident, ''I remember going out Grantland to go to school. I remember that I turned off Belmont and went off Olive and I went south and that I looked to see if anything was coming, and then I heard them talking about an ambulance. That's all I remember.'' On the morning following the accident the statement of defendant concerning the accident was taken down by a shorthand reporter and in it defendant stated that she did not know how fast her car was going and did not know there had been an accident until she heard about it; that the accident happened between a quarter to eight and eight o'clock; that she never saw the other car or the driver. Betty Ruth Doerksen testified that she did not remember the day of the accident; that she had had a complete loss of memory for three days and had no recollection of the accident.

The trial court found that the accident was caused by the carelessness and negligence of the defendant and that it was not true that plaintiff drove or operated his automobile in a negligent manner, or that any carelessness or negligence of the plaintiff contributed to the collision. Judgment was entered in accordance with these findings and defendant appeals therefrom.

Appellant's contention that plaintiff was guilty of contributory negligence as a matter of law and that his negligence contributed to the accident, thus precluding his recovery, is not supported by the record. The rule on this subject is cited

in *Anthony* v. *Hobbie*, 25 Cal.2d 814, 818 [155 P.2d 826], as follows:

"The burden of proving contributory negligence is upon the defendant. (19 Cal.Jur. 697-699.) True, contributory negligence may be found by the trier of fact from the plaintiffs' own evidence. But cases in which it can be said that the negligence of plaintiff contributes proximately to the accident as a matter of law are rare. The rule has been stated in various ways in a legion of cases, that contributory negligence is not established as a matter of law unless the only reasonable hypothesis is that such negligence exists; that reasonable or sensible men could have drawn that conclusion and none other; that where there are different inferences that may be drawn, one for and one against, the one against will be followed; and that before it can be held as a matter of law that contributory negligence exists, the evidence must point unerringly to that conclusion." (Citations.)

We cannot here say that the evidence points unerringly to the conclusion that plaintiff was negligent. ■ Plaintiff, by reason of the injuries which he sustained in the collision was unable to remember the circumstances surrounding it and there was substantial evidence to support this conclusion. The plaintiff was therefore entitled to the presumption of due care and this is conceded by appellant in her opening brief.

In *Russell* v. *Andersen*, 101 Cal.App.2d 684, 694 [226 P.2d 350], the court, quoting from *Simon* v. *City & County of San Francisco*, 79 Cal.App.2d 590, 598 [180 P.2d 393], said:

" 'It is now well settled in this state that where a plaintiff by reason of loss of memory is unable to testify respecting his conduct at and immediately before the time of the accident, and produces no witnesses who testify to such facts, he is entitled to the benefit of the presumption that he was exercising due care. This presumption is itself evidence sufficient to create a conflict with the evidence produced by defendant, and requires that the issue of contributory negligence be submitted to the jury."

■ This disputable presumption is by statute declared to be evidence and is sufficient to support a verdict of a jury unless dispelled by irreconcilable facts proved by the party relying on it; and it may outweigh positive evidence adduced against it. (*Scott* v. *Burke*, 39 Cal.2d 388, 394-395 [247 P.2d 313].) ■ In the instant case it is therefore presumed that plaintiff was not driving at an excessive rate of speed; that he looked to his left, the direction from which danger was

to be apprehended; that he saw defendant's car approaching the intersection, observed its speed and did all that a reasonably prudent person would do under the circumstances to avoid the accident.

Appellant contends that the defendant had crossed virtually two-thirds of the intersection while plaintiff was just entering it and not only did the defendant arrive at the intersection first, but at a slower rate of speed, and that the contributory negligence of plaintiff is therefore apparent.

Section 550 of the Vehicle Code provides that the driver of a vehicle approaching an intersection shall yield the right of way to a vehicle which has entered the intersection from a different highway, and when two vehicles enter an intersection from different highways at the same time, the driver of the vehicle on the left shall yield the right of way to the driver of the vehicle on the right. However, here there was no testimony as to the speed of defendant's automobile or that it entered the intersection first. In *Casselman* v. *Hartford Acc. & Indem. Co.*, 36 Cal.App.2d 700, 707 [98 P.2d 539], the court said:

"Whether or not, therefore, plaintiff after observing the approach of defendant's car, its position, and the rate of speed it was traveling and keeping the same within his side vision, was justified in proceeding upon his rightful way across the intersection in advance of defendant, presents a question upon which reasonable minds might differ, and was therefore one for the jury to determine."

In *Green* v. *Pedigo*, 75 Cal.App.2d 300, 305 [170 P.2d 999], the court said:

"The question of proximate cause, negligence and contributory negligence is primarily one of fact for determination by the duly constituted arbiters thereof. Though it be conceded that defendant was strictly within the law as to the 'right of way,' there is sufficient evidence in the record to warrant an inference by the jury that he did not use, as was his duty, the required ordinary care and skill in the control and operation of his vehicle to avoid an accident."

Appellant argues that the physical facts as shown by the evidence, i. e., the brake marks left by plaintiff's Buick, the absence of any brake marks left by defendant's car, the point of impact, the makes and weights of the respective vehicles, and the condition and position of the respective cars after the accident prove that defendant entered the intersection first; that the Buick was going much faster than the Chevrolet,

and that plaintiff was negligent. However, in *Nagamatsu* v. *Roher*, 10 Cal.App.2d 752, 755-756 [53 P.2d 174], the court, in considering a similar condition, said:

"It is argued that the condition and position of the cars after the accident, with the laws of physics, conclusively prove that the car driven by the deceased was going much faster than the other car and that it struck the appellant's car, knocking it some distance to the north. As has been frequently pointed out in cases of this nature such arguments are unreliable because they fail to take into account the human element, what may have been done by the respective drivers, and because of the many uncertainties which necessarily exist in such matters as the respective weights of the cars, the respective speeds, the exact positions, the force and direction of the blows and many other elements." (Citations.)

In *Kalfus* v. *Fraze*, 136 Cal.App.2d 415, 424 [288 P.2d 967], the court stated:

"Where the existing circumstances militate against precise mathematical calculations, this court has stated the rule that on appeal it 'will not make dubious calculations based upon evidence of time and distance and speed (which evidence after all consists of mere opinions of witnesses) for the purpose of upsetting a verdict of the jury as to the facts.'" (Citations.)

We cannot here say that under the undisputed physical facts the accident was caused by plaintiff's negligence. The question of whether or not plaintiff exercised due care in the instant case was one of fact for the trial court. (*Green* v. *Key System Transit Lines*, 116 Cal.App.2d 512, 521 [253 P.2d 780]; *Bramble* v. *McEwan*, 40 Cal.App.2d 400, 410 [104 P.2d 1054].) The question of whether defendant was negligent was also one of fact. As was said in *Klemko* v. *Ryer*, 118 Cal.App. 238, 239 [4 P.2d 998]:

"As a matter of common knowledge the conclusion is inescapable that where two automobiles collide upon an open intersection, that one or the other of the drivers is negligent and possibly both. The question as to which driver is negligent is one for the jury."

There is substantial evidence in the record to support the trial court's finding herein that the defendant was negligent. It was her duty to keep a lookout for persons and vehicles ahead of her and the failure to keep such lookout or the failure to see that which could be readily seen, if she had been looking, constituted negligence. (*Huetter* v. *Andrews*, 91 Cal.App.2d

142, 146 [204 P.2d 655].) Defendant's view of the intersection was unobstructed. She was approaching a more traveled avenue from a lesser traveled street. She should have seen the plaintiff nearing the intersection and should have exercised care to avoid the collision. There was no evidence that she slackened her speed or applied her brakes upon approaching and entering the intersection. Immediately after the accident and on the following morning when her statement was taken, she stated that she did not see plaintiff's car until after the accident.

Appellant asserts that she is entitled to the presumption of due care because of her inability to remember the events of the accident. However, in her statement the morning after the accident, she related the events surrounding the accident and there stated that she was on yard duty and had to meet the school bus at 8 a. m., and that her companion told her that she would not reach school in time for her yard duty if she did not hurry. She further stated that she did not see plaintiff's automobile before the accident. The fact that she did not see plaintiff's car and failed to apply her brakes or change the course of her car may be inferred from the lack of skid marks at the intersection. Under the circumstances shown by the record, it was a question of fact whether defendant, by reason of loss of memory, was unable to testify concerning her conduct at and prior to the time of the accident. (*Gioldi* v. *Sartorio*, 119 Cal.App.2d 198, 201 [259 P.2d 62].)

The judgment is affirmed.

Barnard, P. J., and Griffin, J., concurred.