[Civ. No. 6011.   Fourth Dist.   Feb. 19, 1960.]

FRANK J. SILVA et al., Plaintiffs; ELSIE B. SILVA, Respondent, v. RUBIE B. PIM, Appellant.

Hanna & Brophy and Guernsey Carson for Appellant.

Manfredo, Best & Forbes, Leland M. Edmon and Calfee, Westover & Calfee for Respondent.

SHEPARD, J.—This action arose out of an intersection collision between two automobiles. The principal facts as disclosed by the record are that Elsie B. Silva, the respondent herein, was riding at about 3 to 3:30 p. m. on December 23, 1956, in a 1956 Dodge automobile being driven by her husband, Frank J. Silva, in a westerly direction on Conejo Avenue in Fresno County. Her four young children and her mother were riding in the rear seat. Rubie Pim, appellant herein, was at the same time driving a 1955 Pontiac automobile in a northerly direction on West Avenue. As a passenger with her rode Warren B. Cady. The fields on the southwest, northwest and northeast corners of the intersection were pasture or low-growing cotton, so that there appears to have been no substantial interference across those corners with a driver's vision of other traffic. However, on the southeasterly corner of the intersection there was a large barn or shop building east of West Avenue and approximately 250 feet south of Conejo Avenue. Approximately 132 feet south of Conejo Avenue and a little farther east than the barn, there was a house of substantial size. North of the house, parked in a north and south direction, there was a large

cotton trailer with paneled sides of substantial height. This trailer was about 90 feet south of Conejo Avenue. Also north of the house was a row of deciduous trees which appear to have no leaves on them. The most southerly tree was opposite the trailer. The most northerly tree appears to have been in the neighborhood of 50 to 60 feet south of Conejo Avenue. The two trees thus described as being north of the trailer and the two power poles on the south side of Conejo Avenue do not appear to obscure a driver's vision of traffic approaching from the south or east to any substantial degree. From the evidence it is not possible to determine just how much of the right of way of each of the two intersecting avenues was "improved, designed, or ordinarily used for vehicular travel." The oral testimony as to most of these distances is uncertain or totally absent. In fact, the distances and position of the barn, house, cotton trailer and trees hereinbefore referred to are before this court principally by reason of the oral stipulations of counsel in the argument of the appeal before this court. Near the northeast corner of the intersection of the two avenues was a street signpost bearing the names of the streets.

Frank Silva was not familiar with this particular section of the country and did not know the exact location of the roads. Respondent's party was proceeding to the home of a relative, located on Hughes Avenue, some miles to the west of the intersection here referred to, and at each intersection the driver, Frank Silva, slowed up somewhat to look at the avenue name sign. He estimates that at about 100 feet from this intersection he observed the existence of West Avenue, took his foot off the throttle, looked to his left, noticed the existence of the large barn, saw no approaching cars, looked to the right, then looked for the street sign, and at a distance of 30 to 50 feet saw said sign. He estimates that at the time he took his foot off the throttle, he was traveling at a speed of approximately 40 to 45 miles per hour. After spotting the avenue sign, he again looked to right and left. He estimates that when he was about 10 feet or less from the intersection, he first noticed appellant's automobile traveling pretty fast, approaching; that at that time appellant's automobile was about 10 feet or more away from the intersection. He says that he immediately "hit" his brakes and entered the intersection first. He remembers the collision, but does not remember which part of the cars struck each other.

Appellant testified that she awoke that morning suffering

from a cold and from arthritic pains in her shoulders and neck, and in the middle or late part of the morning she took one drink of Vodka for medicinal purposes, but indicates that she did not take any codeine or other pain-relieving medicine prior to the accident. She says she was traveling north on West Avenue and estimates that her speed was 40 to 45 miles per hour; that she forgot about the intersection and came upon it before she realized it was there; that she looked to her left at about three car lengths from the intersection, then looked to her right and saw the Silva car for the first time, it then being "right on top" of her; that she did not have time to put on her brake; that the collision occurred and that she remembers nothing more of that phase of the accident.

The testimony of the traffic officers who arrived shortly after the accident and who took pictures and statements and made diagrams of the marks left by the vehicles and their resting places, indicates that the Silva car left brake marks on the surface of the pavement a distance of about 24 feet prior to the point of impact, 18 feet of these brake marks were identified as belonging to the Silva front tires. The Pim car left no brake marks prior to the point of impact. The point of impact was about 3 feet east and 3 feet north of the center of the intersection. The lateral skid marks of one set of wheels belonging to the Pim car were approximately two paces, or 6 feet, but the officer could not identify whether those skid marks were the front or back wheels. The Pim car came to rest about 72 feet from point of impact. The lateral skid marks of the Silva car are not entirely clear, the officer referring in one place to four paces, or 12 feet, and in another place to seven paces, or 21 feet, of broadside skid marks for the front wheels. The Silva car came to rest 45 feet from point of impact. The Pim car bears a mark a few inches in front of the front door on the right side, which appears to indicate the point of impact. A large number of pictures and some diagrams were introduced as exhibits in the trial of the cause, but none of these were forwarded to this court. However, appellant has attached to her closing brief copies of four of the pictures and two of the diagrams. At the oral argument before this court, counsel consented that these pictures and diagrams be a part of the record before this court for the purposes of this appeal.

Appellant places her appeal before this court on only one ground. She contends that the evidence shows as a matter of law that Silva was contributorily negligent and

that since this negligence must be imputed to respondent wife (see *Ferguson* v. *Rogers,* 168 Cal.App.2d 486 [336 P.2d 234]), the respondent therefore cannot recover.

Appellant argues that the testimony of Mr. Silva that he looked but saw no approaching car is inherently improbable in that it cannot be reconciled with the physical facts and that it is therefore not entitled to credence. This is in line with the general proposition that while credit to be given to testimony is normally a question for the trial court or jury, such rule is not applicable where the testimony is inherently improbable. In support of this proposition, appellant quotes from *Bennett* v. *Chandler,* 52 Cal.App.2d 255, 261 [126 P.2d 173],

''Where the testimony, in the light of the undisputed facts, is so inherently improbable and impossible of belief as to, in effect, constitute no evidence at all, the rule that the amount of credit to be given to the positive testimony of any witness is solely a question for the trial tribunal, does not apply.''

She further cites in support of this proposition, *De Arellanes* v. *Arellanes,* 151 Cal. 443 [90 P. 1059]; *Zibbell* v. *Southern Pac. Co.,* 160 Cal. 237 [116 P. 513]; *Doran* v. *City & County of San Francisco,* 44 Cal.2d 477 [283 P.2d 1]; *Taylor* v. *Pacific Container Co.,* 148 Cal.App.2d 505 [306 P.2d 1049]; *Pierce* v. *Black,* 131 Cal.App.2d 521 [280 P.2d 913]; *Gray* v. *Brinkerhoff,* 41 Cal.2d 180 [258 P.2d 834]; *Angelo* v. *Esau,* 34 Cal.App.2d 130 [93 P.2d 205]; *Electrical Products Corp.* v. *County of Tulare,* 116 Cal.App.2d 147 [253 P.2d 111]; *Labarthe* v. *McRae,* 39 Cal.App.2d 565 [104 P.2d 75]; and many other cases.

All rules of law and abstract discussions in judicial opinions must be read in the light of the facts of the case there before the court. *Bennett* v. *Chandler, supra,* involved a frontal collision of cars proceeding in the opposite direction, in which plaintiff was a passenger. A dispute of fact was resolved by the jury, upheld by the trial judge on motion for a new trial, and affirmed by the appellate court. Furthermore, the appellate court, after making the statement which appellant has quoted as hereinbefore set forth, went on to say at page 262:

''On the other hand, it is the duty of an appellate court to exercise great care in applying the tests of common sense and common knowledge of physical laws to a given set of facts. Experience and observation teach that strange things sometimes happen in the world of physical phenomena and accidents sometimes appear to happen in a manner unaccountable.

For these reasons an appellate court must be careful not to give to dogmatic and undemonstrated conclusions respecting natural laws precedence over the testimony of apparently credible witnesses; and the mere fact that the admitted circumstances make the story of the witnesses seem improbable will not justify a reversal by an appellate tribunal on the ground that the verdict is contrary to the evidence.''

The De Arellanes case involved conflicting testimony in an action to set aside a deed for fraud. Again the Supreme Court refused to apply the rule contended for by appellant, stating at page 448 that:

''. . . the amount of credit to be given to the positive testimony of any witness is solely a question for the trial tribunal, except, perhaps, where the testimony, in the light of the undisputed facts, is inherently so improbable and impossible of belief as to, in effect, constitute no evidence at all.''

The Zibbell case was one in which a switch engine backed cars into plaintiff, with resultant personal injury action. Again the Supreme Court, affirming the judgment for plaintiff, refused to apply the rule contended for by appellant, and in doing so said at page 241:

'' 'It is only where no fact is left in doubt, and no deduction or inference other than negligence can be drawn by the jury from the evidence, that the court can say, as a matter of law, that contributory negligence is established. Even where the facts are undisputed, if reasonable minds might draw different conclusions upon the question of negligence, the question is one of fact for the jury.' ''

The Doran case, involving pedestrians who wilfully stepped into the busy middle of the block traffic of a downtown street and into the path of a bus they knew was approaching; the Taylor case in which a car driver negligently started his engine with the car in gear injuring a sidewalk pedestrian; the Gray case, involving inexcusable injury to a pedestrian proceeding with the green light in a pedestrian lane; the Angelo case where plaintiff passenger recovered judgment even though the car in which he was riding went through a stop sign; the Electrical Products Corporation case where plaintiff's truck ran into a hole in the road in spite of a warning sign maintained by the county; the Labarthe case where defendant appeared to be yielding the right of way; and other cases cited by appellant furnish no analogies helpful to appellant herein.

The general substance of appellant's contention revolves around certain mathematical calculations of time, distance and speed. As was said in *Green* v. *Key System Transit Lines*, 116 Cal.App.2d 512 at 521 [253 P.2d 780] :

" 'If, after trial, an appellate court attempted to weigh every one of these impressions which may see*n* contradictory, by the rules of the exact sciences, few verdicts would stand.' "

In *Nagamatsu* v. *Roher*, 10 Cal.App.2d 752, 755 [53 P.2d 174], the court said: "As has been frequently pointed out in cases of this nature such arguments are unreliable because they fail to take into account the human element, what may have been done by the respective drivers, and because of the many uncertainties which necessarily exist in such matters as the respective weights of the cars, the respective speeds, the exact positions, the force and direction of the blows, and many other elements."

In *Swatzell* v. *Pacific Greyhound Lines*, 161 Cal.App.2d 544, 546 [326 P.2d 854], the court said: "It must be remembered, testimony of a witness concerning time, speed or distance, particularly when the case involves moving vehicles which collide at an intersection are only estimates and can never be exact. The determination of who is right or wrong is not therefore the result of mathematical calculation."

There are large numbers of other authorities along the same lines, but we believe further quotations or analyses therefrom are unnecessary.

■ Thus we find on the question of negligence or contributory negligence of a party as a matter of law that if the party involved did exercise some care, the question of whether or not that care was all that an ordinarily reasonable person would have taken under the circumstances of the case continues to be a question of fact for determination of the court or jury. ■ As was said in *Kalfus* v. *Fraze*, 136 Cal.App.2d 415, 430 [288 P.2d 967] :

"Although the general rule is that a driver's failure to maintain such lookout as would enable him to observe all that may be readily seen may constitute negligence as a matter of law (citations), where, as in the present case, the driver testifies that he did in fact look, the question of whether he looked with proper care and saw all that he should have seen is one of fact for the determination of the court or jury."

In *Startup* v. *Pacific Electric Ry. Co.*, 29 Cal.2d 866, 871 [180 P.2d 896], the court said: ". . . 'where it is shown that a [driver] has exercised some care, the question whether or

not the care actually exercised was due and sufficient will always be a matter for determination by the jury.' '' See also *Swingle* v. *Hoffman*, 159 Cal.App.2d 104 [323 P.2d 581]. Numerous other authorities repeat the same rule in different language. We believe it unnecessary to analyze any others.

The right of way of the vehicles at the intersection here involved was controlled by Vehicle Code, section 550, which, insofar as it is here involved, reads as follows:

''(a) The driver of a vehicle approaching an intersection shall yield the right of way to a vehicle which has entered the intersection from a different highway.

''(b) When two vehicles enter an intersection from different highways at the same time the driver of the vehicle on the left shall yield the right of way to the driver of the vehicle on the right.''

An intersection is defined by Vehicle Code, section 86, as follows: '' 'Intersection' is the area embraced within the prolongation of the lateral curb lines, or, if none, then the lateral boundary lines of the roadways, of two highways which join one another at approximately right angles or the area within which vehicles traveling upon different highways joining at any other angle may come in conflict.''

Vehicle Code, section 83, defines a roadway as follows: '' 'Roadway' is that portion of a highway improved, designed or ordinarily used for vehicular travel.''

It is clear from the foregoing that the answer to the question of who had the right of way at the intersection depended upon who arrived at the intersection first, the calculation of which involved the speed of the cars both before and after entering the intersection. Most of the testimony relating to time, distance and speed of the cars in operational travel were estimates. Respondent's driver testified to looking at least twice. While he estimated that he was 100 feet from the intersection at the time he first looked to the left, he may have been much farther away. When he took his foot from the throttle he may have slowed down more or less than he estimated. The jury may well have believed that the speed of appellant was much greater than her testimony indicated. We do not know the weight of either one of the cars. The lateral skid of each car, how it traveled after impact, and how far it ended up from point of impact; the probable movement of the cars at the intersection; width of that portion of the intersection designed, maintained or used for

vehicular travel; amount of decrease in speed from respondent driver's braking; and other factors were all matters for jury calculation.

As was pointed out in *Napoli* v. *Hunt*, 141 Cal.App.2d 782, 786 [297 P.2d 653], we cannot here say that the evidence points unerringly to the conclusion that respondent's driver was negligent.

As has been heretofore stated in a number of authorities: "In reviewing the evidence on such an appeal all conflicts must be resolved in favor of the respondent, and all legitimate and reasonable inferences indulged in to uphold the verdict if possible. It is an elementary, but often overlooked principle of law, that when a verdict is attacked as being unsupported, the power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the conclusion reached by the jury. When two or more inferences can be reasonably deduced from the facts, the reviewing court is without power to substitute its deductions for those of the trial court." (*Crawford* v. *Southern Pac. Co.*, 3 Cal.2d 427, 429 [45 P.2d 183].)

The judgment is affirmed.

Griffin, P. J., and Coughlin, J., concurred.

A petition for a rehearing was denied March 7, 1960, and appellant's petition for a hearing by the Supreme Court was denied April 13, 1960.