[Civ. No. 22472.   First Dist., Div. Three.   Apr. 11, 1966.]

MICHAEL SAFIRSTEIN, a Minor, etc., Plaintiff and Appellant, v. TONY ROBERT NUNES et al., Defendants and Respondents.

Redland & Pinney, Van H. Pinney and Harry J. Kraemer for Plaintiff and Appellant.

Campbell, Custer, Warburton & Britton and Alfred **B.** Britton, Jr., for Defendants and Respondents.

DEVINE, J.—On December 5, 1958, plaintiff, appellant, was a passenger in a vehicle going southerly on Bayshore Highway, which was not then a freeway at the place of the accident. About a city block north of the intersection of Bayshore Highway with Borregas Avenue, Rock, the driver of the car, changed lanes from the outside to the inside lane. He passed one car in the outside lane. There may have been a second car ahead in that lane. Rock testified that he drove at about 45 or 50 miles per hour.

Meanwhile, respondent Nunes, according to his testimony, had approached the Bayshore from the west on Borregas; had stopped at the arterial stop sign; had looked both ways on Bayshore more than once; had waited for two cars coming from the north to pass; had concluded that "the other cars were far enough back"; and had proceeded in low gear at about 5 miles per hour across the southbound lanes of Bayshore. Just as his front wheels began to cross the double line down the middle of the road, Nunes was hit broadside by the Rock car. Rock could not estimate where he was when he first saw the Nunes vehicle. It seemed to be stationary, ahead of him. He testified that he applied his brakes, but the investigating officer found no skid marks. Rock does not remember if he sounded his horn. Nunes testified that he heard the horn "about the time he hit me."

*Whether Nunes Was Negligent As A Matter of Law*

The relevant statute (Veh. Code, § 552 at the time of the accident, now Veh. Code, § 21802) requires every driver to stop at the entrance to a through highway and to yield the right-of-way to vehicles which have entered the intersection or which are approaching so closely on the through highway as to constitute an immediate hazard. (By amendment in 1963, section 21802 requires the "unprotected" driver to continue to yield the right-of-way to such approaching vehicles until such time as he can proceed with reasonable safety. All of the cases cited in this opinion have to do with the statute as it was before the 1963 amendment.) The statute further provided, and still does: "A driver having so yielded may proceed and the drivers of all other vehicles approaching the intersection

on the through highway shall yield the right-of-way to the vehicle so about to enter or cross the through highway." (Veh. Code, § 21802, subd. (b), Stats. 1963, ch. 1844, p 3793; former Veh. Code, § 552, subd. (a), Stats. 1957, ch. 519, p. 1562.)

▐ General principles relating to this statute are stated in this paragraph. The fact that an accident happened is not a demonstration that the vehicle on the through highway was a hazard in the legal sense at the time the approaching driver made his observation. (*Wilkins* v. *Sawyer*, 232 Cal.App.2d 458, 463 [42 Cal.Rptr. 817] ; *Malinson* v. *Black*, 83 Cal.App.2d 375, 378 [188 P.2d 788].) ▐ The mere occurrence of an accident in a protected intersection does not in and of itself raise a presumption of negligence against the unprotected driver. (*Frediani* v. *Ota*, 215 Cal.App.2d 127, 134 [29 Cal.Rptr. 912] ; *Malinson* v. *Black, supra,* p. 378.) Whether a driver acts with due care or negligently in proceeding across a through highway ordinarily is a jury question. (*Frediani* v. *Ota, supra,* p. 134; *Stafford* v. *Alexander,* 182 Cal.App.2d 301, 308 [6 Cal. Rptr. 219] ; *Silva* v. *Pim,* 178 Cal.App.2d 218 [2 Cal.Rptr. 860] ; *Grasso* v. *Cunial,* 106 Cal.App.2d 294, 300 [235 P.2d 32] ; *Malinson* v. *Black, supra,* pp. 377-378; *Casselman* v. *Hartford Acc. & Indem. Co.,* 36 Cal.App.2d 700, 708 [98 P.2d 539].)

▐ We proceed, in the light of the general principles, to consider appellant's contention that respondent Nunes was guilty of negligence as a matter of law. As we see it, Nunes could have been negligent in one of several ways, which we shall consider separately:

1. It would have been possible to establish that Nunes had seen the approaching vehicle and that he misjudged one or more of several factors, such as its speed or its distance, or the speed or distance of vehicles approaching from the south in the far lanes, or the distance from his place of stopping to the lane he wished to enter, or the speed at which he could accomplish this maneuver. However, such mistakes of judgment do not constitute negligence as a matter of law. (*Wilkins* v. *Sawyer, supra,* p. 464; *Malinson* v. *Black, supra,* p. 378; *Granath* v. *Andrus,* 70 Cal.App.2d 99 [160 P.2d 129].) Indeed, appellant concedes that this is the law. We mention this first possibility to show that the jury may have found some mistake on Nunes' part but concluded it was not negligence.

2. It would have been possible for appellant to have persuaded the jury that Nunes, despite his testimony to the con-

trary, did not look for approaching traffic before entering the through highway. This would have been a direct violation of the statute. But the verdict of the jury indicates that it accepted Nunes' testimony that he did look.

3. Another possibility is that Nunes failed to look *carefully* because he failed to see what was clearly visible, the Rock vehicle. Appellant contends that this is not only a possibility but is an undeniable conclusion. Appellant argues that in cases such as *Malinson* v. *Black, supra,* wherein misjudgment was held not to constitute negligence as a matter of law, the driver approaching the through highway actually had seen the approaching vehicle and thereafter may have made some miscalculation, whereas in the case before us Nunes testified he did not see the approaching automobile. But this argument does not necessarily square with the facts. In the first place, the jury may have found that when Nunes looked to the north, the Rock vehicle was in the process of changing lanes and passing behind in the outside lane, and that this obscured visibility at the crucial moment. In fact, it may have decided that this was the very reason why Rock did not see the Nunes vehicle until he was almost in contact with it. This we say not by way of referring to contributory negligence on Rock's part, because this would not be imputable to appellant and the jury was so instructed. We mention it by way of showing that a certain physical fact may have been found by the jury. Generally, where a witness testifies that he did in fact look, the question whether he looked with proper care and saw all that he should have seen is one of fact. (*Silva* v. *Pim, supra,* 178 Cal.App.2d 218, 224; *Kalfus* v. *Fraze,* 136 Cal.App.2d 415, 430 [288 P.2d 967].)

In the second place, Nunes testified that after he let two cars from the north go by, he saw that the other cars were far enough back so he started across. The "other cars" may have included the Rock car. It is true that Nunes testified that he did not see the car which hit him at any time before the impact, but he may have had reference to identifying the vehicle which struck him; the testimony does not rule out the possibility that the Rock vehicle was one of the cars which Nunes judged to be far enough back so as to permit him to cross. Appellant argues that the reference to other vehicles has to do with cars approaching from the south. But the record does not demonstrate that this was so. Nunes may have been referring to vehicles coming from the north, from the south, or from both directions. An appellate court cannot say

what a witness meant if there is doubt about the application of his testimony. We must apply the rule that if two or more inferences are possible, the one in favor of the judgment must be accepted. (*Stafford* v. *Alexander, supra,* 182 Cal.App.2d at p. 308; *Silva* v. *Pim, supra,* p. 226.) The case cited by appellant, *Irvin* v. *Padelford,* 127 Cal.App.2d 135 [273 P.2d 539], is an affirmance of judgments where the trier of the facts had found that adequate lookout had not been made.

4. Another possibility of negligence on Nunes' part is that he should have looked toward the left again after entering the intersection. Although the jury may consider failure to look to the left again, after properly entering an intersection, to constitute negligence, the omission of the driver to renew his observation does not constitute negligence as a matter of law. (*Stafford* v. *Alexander, supra,* p. 310; *Malinson* v. *Black, supra,* 83 Cal.App.2d at p. 378.) Respondent Nunes was not negligent as a matter of law.

### Instructions On Continuous Duty Of Care

Appellant complains that an instruction offered by him as to a driver's duty of care on the highway as being constant and continuing was refused. There is no doubt about the correctness of the legal proposition. But the judge instructed the jury that it is the duty of every person to use ordinary care *at all times* to avoid placing himself or others in danger, and to exercise ordinary care *at all times* to avoid a collision. Again, the judge instructed that it is the driver's duty *to be vigilant at all times,* keeping a lookout for traffic, and to keep his vehicle under such control that he can stop as quickly as would be required by eventualities that would be anticipated by an ordinarily prudent driver. We find no prejudice in the refusal of the proposed instruction.

### Instruction on Imminent Peril

The court gave, at the instance of respondents, an instruction on imminent peril. The form of the instruction is correct, but the instruction was not applicable to respondent Nunes' conduct because he had no awareness of imminent danger. Such awareness is an essential element of the imminent peril doctrine. (*Kuist* v. *Curran,* 116 Cal.App.2d 404, 410 [253 P.2d 281].) We are not impressed by respondents' suggestion that the instruction, although not applicable to Nunes' conduct, was applicable to the conduct of Rock. Perhaps there would have been justification for giving the instruction if appellant had requested it (even though contributory negli-

gence on the part of Rock would not bar recovery by appellant if Rock's negligence were the sole cause of the accident, appellant could not recover), because there was an intimation during cross-examination that Rock should have pulled into the lane to his right at the moment he saw Nunes' car. But appellant did not offer the instruction. The instruction is contained among others having to do with the conduct of Nunes. Nunes, not Rock, was the one on whom appellant sought to fasten responsibility. Therefore, although abstractly the instruction could have been applied for the benefit of Rock, we do not consider this possibility as justifying its presence in the charge to the jury.

The question, then, is whether the giving of the instruction was prejudicial to appellant. An instruction, erroneous or correct, which relates to matters as to which there is no evidence, will not justify a reversal unless it has misled the jury, to the prejudice of the appellant. (*Mehollin* v. *Ysuchiyama*, 11 Cal.2d 53, 57 [77 P.2d 855].) There are, of course, cases in which giving of the instruction has been held prejudicial, such as *Kuist* v. *Curran, supra,* cited by appellant, in which a motorist drove toward a pedestrian, knowing that he was oblivious to the vehicle's approach, and then contended that she, the motorist, was confronted by an unexpected peril by the pedestrian's taking one step. But each case must be decided in the light of its own facts.

Appellant contends that the imminent peril instruction gave the jury to understand that Nunes was not required to do what was the better and safer course in entering the through highway, to wit, to look to his left. We find this to be improbable. The instruction refers to one's being confronted with imminent peril without negligence on his part. Certainly not to look would be negligence per se as a violation of the statute. Besides, common experience would tell the jurors that it would be negligence, apart from the statute, to fail to look before entering a through highway. So to look is not only to do the "safer and better thing," but to do what everyone knows is essential.

The court instructed the jury that the fact that any instruction had been given must not be taken as indicating an opinion of the court that the instruction would be necessary or as to what the facts are, and that if an instruction applies only to a state of facts which the jury should find not to exist, the jury must disregard that particular instruction.

Although the judge informed counsel for both sides, in chambers, that he would give the instruction on imminent peril together with two or three other particular instructions, counsel for respondents made no reference to the subject of imminent peril in his argument to the jury. We do not find that the giving of the instruction was prejudicial error.

Judgment affirmed.

Draper, P. J., and Salsman, J., concurred.