Filed 10/24/16

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| SASSA MINNEGREN, | B264219 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. SC118166) |
| v. | |
| JOSHUA B. NOZAR, | |
| Defendant and Respondent. | |

APPEAL from a judgment and order of the Superior Court of Los Angeles County.  John J. Kralik, Judge.  Affirmed.

AlderLaw, Michael Alder, Stephen K. McElroy, Mary L. Caruso, and Joanna R. Allen, for Plaintiff and Appellant.

Wesierski & Zurek, Arpineh Yeremian and Lynne Rasmussen, for Defendant and Respondent.

_____

A jury concluded that respondent Joshua B. Nozar (Nozar) was not negligent in connection with a two-car collision in which appellant Sassa Minnegren (Minnegren) was injured. Minnegren appeals from the judgment, contending that the special verdict was not supported by sufficient evidence and the trial court erred when it denied her motion for new trial.[1] She also appeals from the denial of her motion for judgment notwithstanding the verdict (JNOV).

In essence, Minnegren asks us to take the verdict away from the jury and determine the evidence established that Nozar was negligent as a matter of law. But long-standing and consistent precedent teach that negligence is a question of fact where, as here, there is evidence that a driver exercised at least some care and therefore might have acted reasonably even if his or her action ultimately led to a car collision. The judgment and order are affirmed.

**FACTS**

**The Collision**

On September 1, 2010, Nozar drove a Range Rover to college for a 9:30 a.m. class and could not find parking in a campus parking lot. Sometime between 9:20 a.m. and 9:45 a.m., he exited the parking lot and drove southbound on 10th Street looking for a place to park. He proceeded to the intersection of 10th Street and Broadway. While 10th Street was controlled by a stop sign going southbound and going northbound, Broadway was not controlled by a stop sign, and he knew motorists on Broadway had the right-of-way. Nozar saw a parking space on the street on the opposite side of the intersection. At the same time, Minnegren was driving eastbound on Broadway in a small car. When Nozar proceeded into the intersection, Minnegren hit him.

---

[1] Minnegren purports to appeal from the denial of her motion for new trial. That order is not appealable. (*Rodriguez v. Barnett* (1959) 52 Cal.2d 154, 156; *Walker v. Los Angeles County Metropolitan Transportation Authority* (2005) 35 Cal.4th 15, 20.) Nonetheless, Minnegren has a remedy. The order is reviewable in connection with her appeal from the judgment. (*Quantum Cooking Concepts, Inc. v. LV Associates, Inc.* (2011) 197 Cal.App.4th 927, 930.) We therefore construe her appeal from the denial of her motion for new trial as a request for review of that decision in connection with her appeal from the judgment.

**The Lawsuit**

Minnegren sued Nozar for negligence.[2]

**Trial**

Two eyewitnesses to the collision, Magdalena Edwards (Edwards) and Christopher Tragos (Tragos), were the first to testify.

According to Edwards, she was driving westbound on Broadway and saw the Range Rover on 10th Street. Initially, she said she "saw a car . . . that was waiting at the stop sign," but later she said it was "clear" to her that it was not going to stop at the stop sign.[3] Edwards saw the Range Rover "shoot" out from 10th Street and collide with another car. Upon stopping, Edwards heard Nozar repeatedly tell Minnegren, "I'm sorry." When a police officer arrived, Edwards reported that the way Nozar had been driving was "very scary" because he accelerated through the intersection without stopping at the stop sign.

Tragos explained that on the morning of September 1, 2010, he was patronizing a cafe located at the intersection of 10th Street and Broadway. Regarding the accident, he saw a Range Rover that "rolled fast" through a stop sign. Then it was "accelerating extremely fast through the intersection," and he heard a "very loud acceleration[.]"

---

[2]    The operative complaint is not part of the appellate record. We presume Minnegren alleged negligence because: In Minnegren's opening statement, her attorney did not refer to a legal theory. On the other hand, in his opening statement, Nozar's counsel stated: "What happened in this accident? Do those things that happened rise to the level of negligence, such that Mr. Nozar should be held responsible for what occurred?" The judgment indicates that there was a special jury verdict form, and the first question was this: "1. Was Joshua Nozar negligent?"

[3]    According to Nozar, Edwards offered three different stories, the third of which was that she first saw the Range Rover when it was already in the crosswalk and moving into the intersection. In our view, this portion of the record is unclear. She was asked, "As very best you can [tell us], where do you think you were on the roadway when you saw [Nozar's] Range Rover coming into the intersection?" The colloquy that ensued was derivative of that question. At no point did Edwards clearly state that she first saw the Range Rover in the crosswalk.

When it was about 75 percent of the way through the intersection, a small car veered to the right in an attempt to avoid a collision. It hit the Range Rover's passenger side door.

Next to testify was Santa Monica Police Officer Stella Padilla. She received a radio call at 9:45 a.m. regarding the collision and responded to the scene to investigate. She asked Nozar whether he stopped at the stop sign, and he said that he did. Further, he stated that when he went into the intersection, he did not see any cars "coming down the roadway." Subsequently, Officer Padilla spoke to Tragos, Edwards and Minnegren. Officer Padilla concluded that the collision was caused by Nozar failing to yield at the stop sign, and that Nozar was "the party at fault." In addition, Officer Padilla concluded that Nozar's speed was an associated factor in the collision.

Minnegren's counsel called Nozar to the witness stand for cross-examination pursuant to Evidence Code section 776. Nozar testified that he stopped at the stop sign, behind the limit line, for about five seconds. On the heels of that, he was asked if he looked left and right. He stated, "I mean, I looked. I looked at the car coming. I thought to myself is that far enough? Yes. I looked to the right. Looked at [the] car . . . coming, is that far enough for me to get through? Yeah. I think so." According to Nozar, he "gradually went . . . through an intersection just how you normally would." His acceleration was minimal. Later, he testified that he "went at a moderate speed."

Nozar was asked if he saw Minnegren's car driving down Broadway. He stated, "I saw her coming—well, when I got to the stop sign, I looked at her. I thought she was [far] enough [away]. . . for me to get through the intersection safely, and I looked to the right. I saw the other car. I thought it was [far] enough [away] for me to get through, and I went there."

The following colloquy ensued between Minnegren's counsel and Nozar:

"Q    You know that and agree that [Minnegren] had the right-of-way that morning[,] did she not?

"A    Yes, she did.

"Q    You never saw her before the collision, did you?

4

"A      Did I—like, I saw her car, but I didn't know it was actually hers until after the collision.

"Q      Okay.  So you did know that she was on the roadway?

"A      Yes.

"Q      You did know she was approaching?

"A      Mmm-Hmm.  [¶]  . . .  [¶]

"Q      You had the ability to judge her speed, didn't you?

"A      Yes, I did.

"Q      So you had some sense of how she was closing on that intersection?

"A      I tried to judge it, yes.

"Q      And you made a bad judgment; is that right?

"A      I did make a bad—

"Q      You pulled out in front of a car that was too close, and it was a hazard?

"A      Unfortunately, it was.

"Q      So you caused a collision?

"A      Um, I would say I did cause it but not intentionally.  I tried my best to make a judgment call.  Unfortunately, it was . . . wrong.

"Q      So at the very least, sir, you'll admit to us now that you negligently drove your car that morning, assuming that you stopped at that stop sign?

"A      No.  I did not negligently drive my car when I came to the stop sign.  I looked left to right.  I thought—I looked at the distance and the speed of the car on both sides.  I thought that I would—that I would be able to clear it, but I didn't.  I'm only human.  I made a mistake."

Later, Minnegren's counsel asked if Nozar saw a car coming down the street when he entered the intersection.  He stated:  "I had—when I—yeah.  I mean, I didn't see her car coming.  Otherwise, I would have—I don't remember, but I don't remember—no.  Actually, I do remember.  I didn't see her car coming."  Nozar admitted that he did not see Minnegren make an evasive maneuver.  The only time he saw Minnegren's car was

5

when he was at the stop sign. Minnegren's counsel asked if it was fair to say Nozar was not looking in Minnegren's direction after he "took off." He replied by stating, "I mean, yes. That's fair."[4]

**Judgment**

The jury rendered a special verdict in favor of Nozar. The trial court entered judgment on the special verdict.

**Posttrial Motions**

Minnegren filed a notice of intention to move for a new trial, and filed motions for a new trial and JNOV based on insufficiency of the evidence. The trial court denied both motions.

This appeal followed.

## DISCUSSION

### I. Sufficiency of the Evidence.

Minnegren contends that the judgment must be reversed because the judgment is not supported by substantial evidence.

A. Standard of Review.

When engaging in substantial evidence review, our power is circumscribed as follows: we must determine whether, on the entire record, there is substantial evidence, contradicted or uncontradicted, which will support the judgment. (*Bowers v. Bernards* (1984) 150 Cal.App.3d 870, 873–874 (*Bowers*).)

The courts have defined substantial evidence to be evidence of ponderable legal significance, evidence that is reasonable, credible and of solid value. (*Roddenberry v. Roddenberry* (1996) 44 Cal.App.4th 634, 651.) Inferences constitute substantial evidence, but only if they are the product of logic and reason. Speculation or conjecture alone is not substantial evidence. (*Ibid.*)

---

[4] Minnegren testified about her alleged injuries but not about the accident. A treating chiropractor and two doctors (one retained by Minnegren, one retained by Nozar) also testified regarding her alleged injuries.

6

B. Negligence Principles.

To prevail on a negligence claim, a plaintiff must establish that the defendant had a duty of care that he or she breached, and that there is causal connection between that breach and damages. (*Conroy v. Regents of University of California* (2009) 45 Cal.4th 1244, 1250.) While the existence of a duty of care is a question of law, breach of that duty and resulting damage are questions of fact. (*Shively v. Dye Creek Cattle Co.* (1994) 29 Cal.App.4th 1620, 1627–1628 (*Shively*).)

Authorities define the duty of care with varying language that is simply the same concept in different dress. Long ago, *Fouch v. Werner* (1929) 99 Cal.App. 557, 564 stated: "'Negligence is either the omission of a person to do something which an ordinarily prudent person would have done under given circumstances or the doing of something which an ordinarily prudent person would not have done under such circumstances. It is not absolute or to be measured in all cases in accordance with some precise standard but always relates to some circumstance of time, place and person. . . .'" Civil Code section 1714, subdivision (a) provides: "Everyone is responsible, not only for the result of his or her willful acts, but also for an injury occasioned to another by his or her want of ordinary care or skill in the management of his or her property or person, except so far as the latter has, willfully or by want of ordinary care, brought the injury upon himself or herself." The instruction set forth by Judicial Council of California Civil Jury Instructions No. 401 provides, inter alia: "Negligence is the failure to use reasonable care to prevent harm to oneself or to others. [¶] A person can be negligent by acting or by failing to act. A person is negligent if he or she does something that a reasonably careful person would not do in the same situation or fails to do something that a reasonably careful person would do in the same situation."

C. The Vehicle Code.

Vehicle Code section 21802, subdivision (a) provides: "The driver of any vehicle approaching a stop sign at the entrance to, or within, an intersection shall stop. . . . The driver shall then yield the right-of-way to any vehicles which have approached from another highway, or which are approaching so closely as to constitute an immediate

7

hazard, and shall continue to yield the right-of-way to those vehicles until he or she can proceed with reasonable safety."

    D.  <u>Negligence Law Related to Auto Collisions</u>.

In auto collision cases, the law establishes "that every mistake of judgment is not negligence, for mistakes are made even in the exercise of ordinary care, and whether such mistakes constitute negligence, is a question of fact." (*Dickison v. LaThorpe* (1954) 124 Cal.App.2d 190, 194 (*Dickison*).) Accordingly, in *Silva v. Pim* (1960) 178 Cal.App.2d 218, 224, the reviewing court held that "on the question of negligence or contributory negligence of a party[,] . . . if the party involved did exercise some care, the question of whether or not that care was all that an ordinarily reasonable person would have taken under the circumstances of the case continues to be a question of fact for determination of the court or jury."

Apropos to the present appeal, we note the following. "Although the general rule is that a driver's failure to maintain such lookout as would enable him to observe all that may be readily seen may constitute negligence as a matter of law [citations], where . . . the driver testifies that he did in fact look, the question of whether he looked with proper care and saw all that he should have seen is one of fact for the determination of the court or jury." (*Kalfus v. Fraze* (1955) 136 Cal.App.2d 415, 430 (*Kalfus*); *Chadwick v. Condit* (1962) 205 Cal.App.2d 313, 317–318 [quoting *Kalfus*].) "'Where a car has actually entered an intersection before the other approaches it, the driver of the first car has the right to assume that he will be given the right of way and be permitted to pass through the intersection without danger of collision. He has a right to assume that the driver of the other car will obey the law, slow down, and yield the right of way, if slowing down be necessary to prevent a collision.'" (*Stafford v. Alexander* (1960) 182 Cal.App.2d 301, 309.) "The fact that an accident happened is not a demonstration that the vehicle on the through highway was a hazard in the legal sense at the time that the approaching driver made his observation." (*Safirstein v. Nunes* (1966) 241 Cal.App.2d 416, 419 (*Safirstein*).) "Although the jury may consider [a driver's] failure to [take a second look at approaching vehicles] after properly entering an intersection[] to

8

constitute negligence, the omission of the driver to renew his observation does not constitute negligence as a matter of law." (*Id.* at p. 421.)

E. <u>Inadequate Record</u>.

Minnegren did not provide us with a record of the jury instructions. As a result, we cannot determine whether the jury was properly instructed on the law, or whether it was improperly instructed. There is a possibility that it was improperly instructed, and that any such error was invited. If the jury reached its verdict based on an erroneous negligence instruction, and if that error was invited, we would be unable to second guess the verdict. Consequently, the appellate record is inadequate for review. (*Gee v. American Realty & Construction, Inc.* (2002) 99 Cal.App.4th 1412, 1416.) Regardless, we opt to forge ahead to the merits, presuming without knowing that the trial court properly instructed the jury.

F. <u>Analysis</u>.

Minnegren argues that "Nozar admitted that he was at fault. [He] admitted that he pulled out in front of [Minnegren] when it was not safe to do so. [He] admitted that [Minnegren] had the right-of-way and that he was supposed to yield to her." In addition, according to Minnegren, Nozar admitted that he pulled out in front of a car that was too close, that he pulled out in front of a car that was a hazard, and that he caused the collision. In other words, Minnegren argues that the judgment was not supported by substantial evidence because Nozar admitted fault. Put another way, Minnegren tacitly argues that Nozar's admissions legally cancel out the evidence, if any, that supported the judgment, and therefore his admissions took the issue of negligence out of the jury's hands, requiring the jury to find for Minnegren as a matter of law. In her appellate briefs, she cites no law supporting this novel contention. "'When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived. [Citations.]' [Citation.]" (*Nelson v. Avondale Homeowners Assn.* (2009) 172 Cal.App.4th 857, 862.)

It bears repeating that whether there was a breach of the duty of care, and whether there was resulting damage, are questions of fact. (*Shively*, *supra*, 29 Cal.App.4th at

pp. 1627–1628.) Thus, whether Nozar believed and admitted after the fact that he caused the collision by pulling into the intersection when it was not safe for him to proceed does not categorically mean that he breached a duty of care, or that the jury was foreclosed from rendering a verdict in favor of Nozar. He testified that he looked and saw Minnegren's car approaching, and thought he could make it through the intersection safely. Thus, he exercised some measure of care, and it was up to the jury to determine whether Nozar exercised due care.

According to Minnegren, we should disregard Nozar's testimony that he stopped at the stop sign, and that we should instead favor the testimony of Tragos and Edwards indicating that he never stopped, and the testimony of Officer Padilla, who concluded that Nozar failed to yield at the stop sign. The problem with this argument is that runs afoul of the substantial evidence test. The test requires us to view "the record in a light most favorable to the verdict, resolving all conflicts in the evidence and drawing all reasonable inferences in favor of the verdict." (*Kephart v. Genuity, Inc.* (2006) 136 Cal.App.4th 280, 291. "We can interfere with the jury's determination only if, when the record is so viewed, we can say that there is no substantial evidence to support the verdict. [Citations.]" (*Ibid.*) Accordingly, we are obligated to accept Nozar's testimony, and to disregard any conflicting testimony.[5]

Next, Minnegren argues that even if Nozar stopped at the stop sign before attempting to cross the intersection, and even if he saw her car, that did not support the verdict because he never looked Minnegren's way again as he pulled out in front of her, causing their cars to collide. But the failure to take a second look is not per se negligent, and the jury was empowered to decide if it was reasonable. (*Safirstein*, *supra*, 241 Cal.App.2d at p. 421.)

---

[5]     In passing, Minnegren suggests that Nozar's testimony was not credible or solid. But it was credible in the sense that it was possible that he stopped at the stop sign. And his testimony was solid in the sense that it was a firsthand account, i.e., he was a percipient witness to his own actions.

10

Pressing her point from a different angle, Minnegren adverts to Vehicle Code section 21802, subdivision (a)—which required Nozar to yield the right-of-way to her if she was approaching so closely as to constitute an immediate hazard—and to Vehicle Code section 22350—which required Nozar to refrain from driving at a speed greater than was reasonable or prudent. She maintains that he violated these statutes by failing to yield the right-of-way to her, and by pulling out into the intersection at a speed that was not reasonable or prudent. According to Minnegren, "Nozar's actions are the textbook definition of negligence."

Submerged within Minnegren's express argument is the following implied argument: The only reasonable inference from the evidence is that Minnegren's speed and position made it unsafe for Nozar to proceed into the intersection, and this would have been apparent to a reasonably prudent driver. Consequently, no reasonably prudent person would have pulled into the intersection in front of Minnegren, and this means that Nozar breached the duty of care. This implied argument requires us to examine whether it was reasonable for the jury to infer either that Minnegren's speed and position made it safe for Nozar to proceed into the intersection, or that he reasonably perceived that he could proceed into the intersection without calamity. Also, we must examine whether the jury could have found that Minnegren failed to meet the burden of proving that Nozar fell below the standard of care. (*Wheeler v. Gregg* (1949) 90 Cal.App.2d 348, 370 ["negative findings are justified by the rule that where no evidence is introduced in support of an issue[,] finding[s] should be made thereon against the party who has the burden of proof"]; *Haney v. Kinevan* (1946) 73 Cal.App.2d 343, 344.)

Minnegren's actual speed and position—objectively speaking—did not make it safe for Nozar to proceed into the intersection, and there is no reasonable inference otherwise. The question remains as to whether Nozar actually and therefore reasonably perceived that he could safely proceed. He indicated that he actually perceived that he could. Was that inherently improbable? (*People v. Young* (2005) 34 Cal.4th 1149, 1181 [unless testimony is physically impossible or inherently improbable, the testimony of a single witness is sufficient to support a judgment].) There is no basis for us to conclude

11

that it was inherently improbable because the evidence did not establish Minnegren's exact speed and position at the time Nozar allegedly stopped at the stop sign and saw her car proceeding eastbound on Broadway. As a result, Nozar's testimony must be indulged on appeal. Based on Nozar's testimony, it was permissible for the jury to find that because Nozar actually perceived that he could proceed safely, his perception was reasonable. Alternatively, the jury may well have concluded that the evidence was insufficient to establish whether or not Nozar's perception was reasonable, and Minnegren therefore did not meet her burden of proof.

Case law supports our conclusion.

Regarding former Vehicle Code section 552, the predecessor to Vehicle Code section 21802, *Malinson v. Black* (1948) 83 Cal.App.2d 375, 377 (*Malinson*), stated, "'The statute does not require a driver approaching an arterial highway to refrain from crossing until the highway is free from all traffic. It places on him the duty of determining, in the exercise of ordinary care, when a crossing would not 'constitute an immediate hazard.'" In that case, the question was whether a driver violated the statute upon entering an intersection. The court stated, "Respondent testified that he came to a complete stop at the boulevard stop sign, surveyed the highway, saw that no cars were approaching from the right, and that the nearest car, presumably appellant's, approaching from the left, was at a distance of approximately 80 yards north of the intersection. Having concluded that he had plenty of time to safely cross the intersection, he proceeded in, looking straight ahead. Respondent may have been mistaken in his judgment of the distance of appellant's car from him. Or he may have incorrectly estimated the time it would take him to drive his own car from a standing stop past the center line of the highway. Whether such a mistake of judgment constituted negligence was a question of fact. . . . Appellant stresses the admission that respondent did not look again toward appellant's car after he had stopped and observed its distance from him. But we cannot declare such conduct to be negligence as a matter of law." (*Id*. at pp. 377–378.) The court went on to state, "The evidence on the issue of respondent's negligence . . . [is] subject to conflicting inferences, [and] it cannot be said that he entered the intersection in

12

violation of section 552 of the Vehicle Code, for whether or not appellant's car constituted an immediate hazard to a reasonably prudent person at that moment was clearly a question of fact. That the accident occurred is not proof that respondent violated" the statute. (*Malinson, supra,* at p. 378.)

In *Dickison*, a driver caused a collision, and the evidence showed that she "was mistaken as to her ability to safely cross [a] highway." (*Dickison*, *supra*, 124 Cal.App.2d at p. 194.) But because not every mistake equates to negligence, the court cited *Malinson* and stated that "we cannot hold that [the driver] was guilty of negligence as a matter of law[.]" (*Dickison*, *supra*, at p. 194.)

*Spriesterbach v. Holland* (2013) 215 Cal.App.4th 255 (*Spriesterbach*) involved a car that moved out of a walled off parking lot and hit a bicyclist on the sidewalk. The plaintiff, the bicycle rider, testified that he saw the defendant's vehicle stopped at the threshold of the parking lot and assumed she saw him and was waiting for him to cross. The defendant testified that she did not see the plaintiff. (*Id*. at pp. 259–261.) On appeal following a defense verdict, the plaintiff argued that the trial court committed error, inter alia, when it failed to instruct the jury that if the defendant violated Vehicle Code section 21804,[6] it must find that she was negligent per se. The *Spriesterbach* court cited the rule in *Malinson*. (*Spriesterbach*, *supra*, at p. 265.) Then it held that a driver entering a public highway from private property who collides with a vehicle travelling on a public road is not necessarily liable for a violation of Vehicle Code section 21804. The driver is liable only if he or she failed to act as a reasonably prudent person. Because the jury was instructed on general negligence and found that the defendant acted as a reasonably

---

[6] Vehicle Code section 21804 provides: "(a) The driver of any vehicle about to enter or cross a highway from any public or private property, or from an alley, shall yield the right-of-way to all traffic, as defined in Section 620, approaching on the highway close enough to constitute an immediate hazard, and shall continue to yield the right-of-way to that traffic until he or she can proceed with reasonable safety. [¶] (b) A driver having yielded as prescribed in subdivision (a) may proceed to enter or cross the highway, and the drivers of all other vehicles approaching on the highway shall yield the right-of-way to the vehicle entering or crossing the intersection."

prudent and cautious person, the plaintiff was not prejudiced by the lack of a negligence per se instruction. (*Spriesterbach*, *supra*, 215 Cal.App.4th at p. 268.)

Here, as in *Malinson*, *Dickison* and *Spriesterbach*, it was possible that Nozar made a mistake but was not negligent.

In her reply brief, Minnegren argues that the only support for the verdict is Nozar's self-serving but contradictory trial testimony, and therefore the judgment is not supported by sufficient evidence. Specifically, Minnegren contends that the testimony from Nozar supporting the judgment "is not consistent with the version of events he provided to the investigating officer immediately following the accident. At the scene of the accident, [Nozar] told the officer that he had *not* seen any cars when he started crossing the road. . . . At trial, [Nozar] simply changed his story and told the jury that he *did* see [Minnegren's] vehicle and made a 'judgment call' that he had time to cross the road. [¶] . . . There is simply no inference that can reasonably be drawn from [Nozar's] trial testimony that he exercised due care."

To support her argument, Minnegren cites *Jonkey v. Carignan Construction Co.* (2006) 139 Cal.App.4th 20, 24, which set forth the substantial evidence test and added, "'Even in cases where the evidence is undisputed or uncontradicted, if two or more different inferences can reasonably be drawn from the evidence this court is without power to substitute its own inferences or deductions for those of the trier of fact. . . . We must accept as true all evidence and all reasonable inferences from the evidence tending to establish the correctness of the trial court's findings and decision, resolving every conflict in favor of the judgment. . . .' [Citation.]"

The rule set forth above does not aid Minnegren because it does not establish that an appellate court is required to disregard self-serving and contradictory testimony, nor that self-serving and contradictory testimony is disqualified from constituting substantial evidence. The truth is the opposite. All relevant evidence is admissible, unless a statute or constitutional provision bars its admission. (*People v. Bryant, Smith and Wheeler* (2014) 60 Cal.4th 335, 405.) Minnegren did not cite any law establishing that self-serving testimony must be excluded even if it was relevant. Because Nozar's testimony

was relevant to the issues—it had a tendency in reason to prove or disprove his alleged negligence (Evid. Code, § 210)—it was admissible. "'It [was] for the [jury] to consider internal inconsistencies in [his] testimony, to resolve them if [that was] possible, and to determine what weight should be given to such testimony.' [Citation.]" (*Davis v. Foster Wheeler Energy Corp.* (2012) 205 Cal.App.4th 731, 736.) Moreover, the jury was permitted to "believe and accept a portion of the testimony of [Nozar] and disbelieve the remainder. [Citation.]" (*People v. Chavez* (1968) 268 Cal.App.2d 381, 383.) When applying the substantial evidence test, we must uphold a judgment even if the evidence supporting it is contradicted. (*Bowers*, *supra*, 150 Cal.App.3d at pp. 873–874.) As a result, the substantial evidence test requires us to accept any portion of Nozar's testimony that supports the judgment.

## II. The Motions for New Trial and JNOV.

Minnegren argues that the motion for new trial and motion for JNOV should have been granted based on insufficiency of the evidence. (Code Civ. Proc., § 657; *Sweatman v. Department of Veterans Affairs* (2001) 25 Cal.4th 62, 68.) But, as we have already explained, substantial evidence supported the jury's verdict. Thus, we conclude that both motions were properly denied.[7]

---

[7] The denial of a new trial motion is reviewed for an abuse of discretion, except that a trial court's factual determinations are reviewed under the substantial evidence test. (*Sandoval v. Los Angeles County Dept. of Public Social Services* (2008) 169 Cal.App.4th 1167, 1176, fn. 6.) "On appeal from the denial of a JNOV motion, an appellate court must review the record de novo and make an independent determination whether there is any substantial evidence to support the jury's findings. [Citations.]" (*Hirst v. City of Oceanside* (2015) 236 Cal.App.4th 774, 782.)

15

## DISPOSITION

The judgment and the posttrial order denying the motion for JNOV are affirmed. Nozar is entitled to recover his costs on appeal.

**<u>CERTIFIED FOR PUBLICATION</u>.**


_____, Acting P. J.
           ASHMANN-GERST


We concur:


_____, J.
    CHAVEZ


_____, J.
    HOFFSTADT