Filed 10/6/20  Lopez v. Robledo CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### SECOND APPELLATE DISTRICT

### DIVISION TWO

| | |
|---|---|
| REBECCA LOPEZ, | B300713 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BC671818) |
| v. | |
| KENNETH ROBLEDO, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Barbara Marie Scheper, Judge.  Reversed and remanded with directions.

John L. Dodd & Associates, John L. Dodd; and Alyce S. Minsky for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

_____

Kenneth Robledo (Robledo) appeals the judgment in favor of Rebecca Lopez (Lopez) for $55,884 based on breach of implied contract, unjust enrichment and constructive trust. We reverse and remand with directions to the trial court to enter judgment in favor of Robledo.[1]

## FACTS

### The Complaint; the First Amended Complaint (FAC)

Lopez filed her complaint on August 9, 2017. Eventually, she filed the FAC.

Per the FAC, Lopez and Robledo began dating in the late 1990's and she moved into his home. They entered an oral agreement that she would pay for utilities, groceries, and household items, and he would pay the mortgage, taxes and the cost of maintaining the residence. In 2001, he was discharged from the Navy and they discussed his desire to earn a master's degree. She agreed to bear the financial burdens of the household until he got a job, and he promised that they would own all assets equally. He obtained his Master's Degree in 2003 but did not get a job. In addition to paying the household expenses, she began making the mortgage payments in the amount of $886.63 a month.

For eight years, Robledo worked sporadically and did not contribute to the household. He consistently reassured Lopez

---

[1] Lopez has elected not to participate in this appeal. "Where, as here, there is no respondent's brief, we 'decide the appeal on the record, the opening brief, and any oral argument by the appellant.' [Citation.] We do not consider the failure to file a respondent's brief . . . an admission of error." (*County of San Diego Dept. of Child Support Services v. C.P.* (2019) 34 Cal.App.5th 1, 7, fn. 7.)

that she was contributing to a shared asset, i.e., the residence. In February 2012, Robledo began receiving his pension income from the Navy. Only then did he begin contributing to the household expenses and mortgage.

"In October of 2015, [Lopez] suspected [Robledo] was having an affair. He was being secretive and behaved in [a] furtive manner. After confronting [him], [she] left the home broken and shattered and feeling used. [¶] . . . Before leaving in June of 2016, [she] demanded she be paid for the contributions she made over the years as promised by [Robledo]. [He] refused to acknowledge his promises or admit that [she] was entitled to her share of the assets that had accumulated during the time of their relationship." By his refusal to acknowledge her interest, he breached their contract.

The FAC sought legal and equitable remedies based on the following causes of action: (1) specific performance or damages for breach of contract; (2) constructive trust based on breach of express contract; (3) constructive trust based on breach of implied contract; (4) declaratory relief; (5) fraud; (6) intentional infliction of emotional distress; (7) negligent infliction of emotional distress; and (8) partition.

**Trial; Judgment**

The trial court held a bench trial.

Lopez's Testimony

Lopez moved in with Robledo. He did not promise to provide her with a home. Rather, they initially agreed she would pay for utilities and groceries. The home was always in Robledo's name; she never asked to have her name put on the house, and he never said he would do so. They did not make joint purchases to renovate the property; they did not have a joint bank account;

3

and her name was never added to utility bills. After being discharged from the Navy, Robledo obtained a master's degree in human resources in 2002 or 2003. He was not regularly employed after his discharge until 2011 or 2012. In return for paying all their expenses, she expected him to get a job.

At some point, Robledo gave Lopez a ring. But he did not ask her to marry him.

The house had no mortgage at first, but he borrowed money against it to pay for his education. She paid the mortgage until he began receiving his Navy pension. The mortgage payment was $886.63. By paying Robledo's bills, she did not think she would get anything back other than a relationship. She thought they were sharing a life together, and she thought that their relationship would continue.

Two incidents caused Lopez to leave Robledo. In December 2015, Lopez had surgery and was upset because Robledo did not visit her in the hospital or provide the support she expected. Then, she found romantic text messages between him and another woman.

<u>Robledo's Testimony</u>

Robledo served 10 years in the Navy, followed by 16 years in the Navy Reserve.

In 1998, Lopez said she wanted to move out of her brother's house. Robledo said Lopez could move into his house if she bought groceries and paid utilities. He had a tenant at the time who was paying approximately $750 in rent. In 2000, Robledo stopped receiving checks from the Navy Reserve. Lopez agreed to pay $750 in rent in addition to the other things she paid for.

Around 2000, Robledo decided to pursue a master's degree in organizational management and get a job in human resources.

He took out a loan on his house to pay for his education and other things.  The utilities and loan were in his name.

He used the money he received from Lopez to pay his mortgage and other expenses.  They never talked about getting married, buying property together, or a permanent future together.  They were not in a committed personal relationship, and he never promised to take care of her for the rest of her life.

He eventually got a job in funeral services.

In 2016, he asked Lopez to find another place to live.  He did not think she needed to be reimbursed for any of the bills she had paid.

Asked to describe their relationship, he said it was romantic for one and a half years.  Then they were just friends who slept in the same bedroom.

Other Testimony

Other witnesses testified, inter alia, as to the nature of Lopez and Robledo's relationship.

Closing Briefs

In her closing brief, Lopez argued that "[t]his is a case of unjust enrichment" and claimed Robledo should pay her $236,641.63, the total amount she paid for the mortgage, the utilities and groceries.  She sought a constructive trust.  In addition, she urged the trial court to enforce the parties' contract.  Regarding that contract, she stated:  "[She] . . . agreed to pay for all groceries and utilities for [Robledo's] house in return for their special relationship.  She later paid the loan on the house."

In response, Robledo argued that Lopez did not establish grounds for relief.

The Hearing on the Closing Briefs; Statement of Decision; Judgment

At the hearing, the trial court asked Lopez's attorney to identify the terms of the agreement and the supporting evidence. She stated, "[Lopez] would pay him. She agreed to pay bills that at that time he did not have sufficient income to pay. And he agreed to take her into his home." Also, the attorney argued that Lopez "had an implied contract with him that they would stay together" and he breached the contract when he asked her to leave.

The trial court issued a statement of decision in which it found that the parties entered an implied in fact contract in which Robledo promised Lopez love and companionship and a place to live together in exchange for her promise to contribute certain payments toward the household expenses, and that they were committed partners at least until 2015. The trial court found that Lopez paid household expenses and the mortgage, and that Lopez and Robledo agreed and intended to live together indefinitely.

In addition, the trial court found that Robledo was financially dependent upon Lopez and would not have kept his mortgage current or kept up with other expenses without Lopez's contributions. It found that he would be unjustly enriched if he retained the benefits of the mortgage payments made by Lopez. It further found that Lopez would not have made those payments unless Robledo agreed they would live together indefinitely.

The trial court concluded that Lopez was entitled to recover damages based on breach of implied contract and unjust enrichment in the amount of $55,884. That figure represented the mortgage payments Lopez made between December 2006 and

6

December 2012.  The trial court concluded that Lopez was entitled to a constructive trust as to the same amount.  Also, it awarded prejudgment interest.  Thereafter, it entered judgment.

**Motion for New Trial**

Robledo moved for a new trial and argued, inter alia, that any contract to live together indefinitely was unenforceable under the anti-heart balm statutes.  Next, he argued that prejudgment interest was unavailable.

The trial court granted the motion in part, striking the prejudgment interest.  In all other respects, the motion was denied.

This appeal followed.

## DISCUSSION

Robledo contends that we should reverse the judgment because, among other reasons, the evidence was insufficient to support the judgment; any implied contract violated the anti-heart balm statutes and was therefore unenforceable; and there was no legal basis to impose a constructive trust.[2]

---

[2]     Though Robledo discusses all the causes of action asserted by Lopez in the FAC, the trial court decided the case based on implied contract, unjust enrichment and constructive trust.  Our discussion focuses only on the theories that supported the judgment.  Also, we note that Robledo seeks review of the trial court's refusal to apply the statute of limitations when it overruled a demurrer to the FAC, when it rendered the judgment, and when it partially denied the motion for new trial.  Because we resolve this appeal on other grounds, we need not consider the statute of limitations.

**I. Sufficiency of the Evidence.**

Robledo posits that there was insufficient evidence of an implied contract, breach, damages or unjust enrichment. When reviewing the record to determine sufficiency of the evidence, "We must determine whether, on the entire record, there is substantial evidence, contradicted or uncontradicted, which will support the judgment. [Citation.]" (*Minnegren v. Nozar* (2016) 4 Cal.App.5th 500, 506.) The law establishes that while inferences may constitute substantial evidence, they must be the product of logic and reason. "Speculation and conjecture alone is not substantial evidence." (*Roddenberry v. Roddenberry* (1996) 44 Cal.App.4th 634, 651.)

A. <u>Contract Issues</u>.[3]

The elements of a cause of action for breach of contract are the existence of a contract, the plaintiff's performance or excuse

---

[3]     Robledo contends that Lopez did not bring this action under *Marvin v. Marvin* (1976) 18 Cal.3d 660, 682 (*Marvin*). *Marvin* explained that nonmarital partners may enter a contract regarding their property rights. (*Id.* at p. 668.) "Agreements between nonmarital partners fail only to the extent that they rest upon a consideration of meretricious sexual services." (*Id.* at pp. 670–671.) It is unclear whether Lopez thought her case arose under *Marvin*. The FAC raised a *Marvin* theory, but it appears Lopez abandoned that theory at trial. In her closing brief, she cited *Marvin* but did not say that Robledo and she entered an agreement regarding their property rights. And at oral argument on the closing briefs, her attorney said the agreement was for Robledo and Lopez to live together indefinitely, and this is the contract found by the trial court. The record therefore establishes that Lopez's theory of the case was that she entered an implied in fact contract with Robledo to live together indefinitely.

8

of performance, defendant's breach, and resulting damages to the plaintiff. (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 821.) A contract is either express or implied. (Civ. Code, § 1620.) An implied contract requires mutual assent and consideration. The existence and the terms of an implied contract are manifested by conduct. (*Pacific Bay Recovery, Inc. v. California Physicians' Services, Inc.* (2017) 12 Cal.App.5th 200, 215; Civ. Code, § 1621.)

The trial court found that the parties entered an implied in fact contract in which Robledo would give Lopez a home and live with her indefinitely if she paid the household expenses and the mortgage. These findings lack support.

Lopez did not testify that Robledo promised to give her a permanent home or live with her indefinitely in exchange for her monetary contributions to their joint life. It is speculation to infer mutual assent to the purported terms based on the facts. Robledo never promised to give Lopez a permanent home. They were not married, he did not put her name on the title to his home, they did not have a joint bank account, and her name was not on any of the utilities.

Because there was no contract, whether there was a breach or resulting damages is moot.

Even if Lopez proved an implied in fact contract to live with Robledo indefinitely, we would conclude that it was not enforceable as a matter of public policy based on analogy to the anti-heart balm statutes. (*Cariveau v. Halferty* (2000) 83 Cal.App.4th 126, 131 [a contract is unenforceable if the interest in its enforcement is clearly outweighed in the circumstances by a public policy against the enforcement of such terms].) Though Robledo did not raise the anti-heart balm issue until he filed his

9

motion for new trial, we observe that a purely legal issue can be raised at any time. (*Craig v. County of L.A.* (1990) 221 Cal.App.3d 1294, 1299, fn. 3 [a legal issue can be raised for the first time on appeal].)

The anti-heart balm statutes are section 43.4 and section 43.5. Section 43.4 provides that there is no cause of action for a fraudulent promise to marry or cohabit after marriage, and section 43.5 provides that "[n]o cause of action arises for" breach of a promise of marriage. In *Askew v. Askew* (1994) 22 Cal.App.4th 942, 957–958, the court explained that "these statutes not only preclude certain 'old fashioned' causes of action, but also embody a basic reluctance on the part of both the Legislature and the judiciary to allow recovery for promises of love. This reluctance stems, no doubt, from the sheer unseemliness of litigating tender matters of romantic or sexual emotion in courts of law."

If enforcement of a promise to marry or cohabit after marriage is against public policy, then we must conclude that a promise between two unmarried people to live together indefinitely is unenforceable.

B. <u>Unjust Enrichment</u>.

Unjust enrichment is the result of a failure to make restitution under circumstances where restitution would be equitable. (*Melchior v. New Line Productions, Inc.* (2003) 106 Cal.App.4th 779, 793.) Further, restitution should be required only when it does not frustrate the law or public policy, either directly or indirectly. (*Peterson v. Cellco Partnership* (2008) 164 Cal.App.4th 1583, 1595.)

The trial court erred when it found that Robledo had been unjustly enriched and should make restitution to Lopez. First,

equity did not demand restitution.  Lopez received a benefit from her contributions, i.e., a place to live.  Thus, there was nothing inequitable about Robledo retaining the benefit of her contributions.  Second, restitution would frustrate the public policy of the anti-heart balm statutes.

## II.  Constructive Trust.

"'A constructive trust is an involuntary equitable trust created by operation of law as a remedy to compel the transfer of property from the person wrongfully holding it to the rightful owner.  [Citations.]  The essence of the theory of constructive trust is to prevent unjust enrichment and to prevent a person from taking advantage of his or her own wrongdoing.  [Citations.]'"  (*Burlesci v. Petersen* (1998) 68 Cal.App.4th 1062, 1069.)  The trial court erred when it imposed a constructive trust because Robledo did not wrongfully withhold property from Lopez, nor was he unjustly enriched, nor did he take advantage of his own wrongdoing.

## DISPOSITION

The judgment is reversed. Upon remand, the trial court is directed to enter judgment in favor of Robledo. Robledo is entitled to his costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


_____, J.
           ASHMANN-GERST


We concur:


_____, P. J.
    LUI


_____, J.
    CHAVEZ