Filed 5/7/26  Marriage of C.M. and A.S. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re the Marriage of C.M. and A.S. | |
| C.M., <br><br> Respondent, <br><br> v. <br><br> A.S., <br><br> Appellant. | F090435 <br><br> (Super. Ct. No. 16CEFL02670) <br><br> **OPINION** |

-ooOoo-

## THE COURT\*

APPEAL from a judgment of the Superior Court of Fresno County.  Glenda Allen-Hill, Judge.

A.S., in pro. per., for Appellant.

No appearance for Respondent.

-ooOoo-

---

\*       Before Hill, P. J., Peña, J. and Meehan, J.

## INTRODUCTION

Appellant A.S. (Father) appeals from the trial court's order granting respondent C.M.'s (Mother) petition for a domestic violence restraining order (DVRO) under the Domestic Violence Prevention Act (DVPA) (Fam. Code, § 6200, et seq.) (undesignated statutory references are to the Family Code), and denying Father's petition for a DVRO. Father argues the trial court failed to make the necessary express findings under section 6305, and no substantial evidence supports the ruling.

As the trial court declined to issue *mutual* restraining orders, the trial court was not obligated to make express findings under section 6305. Further, we find substantial evidence supports the trial court's order. On this basis, we affirm.

## FACTUAL BACKGROUND

In August 2025, Mother filed a petition for a DVRO. She alleged that, during a custody exchange, she attempted to speak with her son because Father would not let him exit the car. She told her son he did not need to be afraid, and he could come home if he wanted. According to Mother, Father then shoved her twice in front of the children, leaving a visible mark on her arm. Their daughter tried to run toward Mother, but Mother told her to stay back because she was not sure what Father would do next. Ultimately the police were called, and Father was arrested. Mother also indicated Father made harassing phone calls to her, drives by her home weekly, and is stalking her.

About 10 days later, Father filed a petition also seeking a DVRO. Father filed a supporting declaration stating that on July 25, 2025, during a routine custody exchange, Mother became extremely aggressive and tried to forcibly remove their son from Father's convertible vehicle because he wanted to stay with Father. According to Father, Mother and her fiancé, who was present for the altercation, acted violently and damaged Father's vehicle while trying to extract their son from his car. He filed a request for sole legal and physical custody of the children. He also attached photographs from the incident and a $6,863.43 repair estimate for his car.

2.

In a supplemental declaration, Father explained his friend was present at the custody exchange to serve Mother with legal documents regarding their custody case. Mother came close to Father and then accused him of shoving her, which Father asserts is untrue. Father had positioned himself in self-defense to prevent Mother from reaching into his vehicle where their son was sitting. Despite the purported shove, Mother remained very close to Father, and Father closed the convertible top on the vehicle to deescalate the situation.

After hearings were held, the court ruled in open court that Mother had met her burden of proof to support the issuance of a DVRO, and ordered that it be in effect for three years. The court also found Father had not met his burden of proof and denied his petition. Mother was granted sole physical and legal custody of the children, Father was granted unsupervised visitation on scheduled weekends, and custody exchanges were to occur at the children's school or at Supporting Hands Family Agency.

While the record on appeal does not contain a reporter's transcript, Father filed a proposed settled statement, which the trial court certified. The settled statement contains a summary of the evidence submitted at the hearing on the petitions, and a summary of the court's ruling. As follows, the settled statement provides the following summary from proceedings held on August 29, 2025:

> "[Mother] testified that earlier in the day on the day of the incident, she sent her fiancé [D.V.] to pick up the children. She stated that [Father] did not release the children to her fiancé [D.V.] She then stated that she called the police.

> "[Mother] testified that during a custody exchange at a mutually agreed police station location, she walked over to [Father's] car to remove her son. She stated that when she reached inside the vehicle to unbuckle the child's seatbelt, [Father] shoved her.

> "[Mother] did testify that she stated, 'be ready for what's about to [happen] next.' [Mother] said that she meant for a police standby.

3.

"[Mother] later testified that she was referring to court ordered messages between [Father] and herself.  She referred to the messages that said she was 'filing for a temporary restraining order[.]'  After [Mother] said, that she was implying that she meant she was going to file for a temporary restraining order when she said 'be ready for what's about to happen next.'

"[Mother] testified that she does get escorted out of the courthouse.

"[Mother] also stated that earlier in the day, her fiancé went to pick up the children but was unable to do so because [Father] refused to release them.  She claimed police were later called after the exchange.  [Mother] denied damaging [Father's] vehicle but admitted reaching into the car to assist her son.

"[Mother] claimed she and the children feared [Father], cited that there is [a] 'fine line' in calling police on [Father].  She stated she is not aggressive."

D.V. also testified on August 29, 2025, as summarized in the settled statement:

"[D.V.] stated that [Mother] had previously requested escorts out of the courthouse for safety reasons.

"[D.V.] confirmed that police were called after the exchange earlier on the day of the incident because he was unable to retrieve the children at that time.

"[D.V.] testified he was present during the custody exchange and observed portions of the incident.

"[D.V.] initially stated that [Father] struck [Mother], but later said that he did not say that.

"[D.V.] then testified that he saw [Father] raise his arm in a defensive manner.  He said that [Father] moved [Mother], which he interpreted as pushing her, though he acknowledged the arm position suggested as [*sic*] a defensive action.

"[D.V] confirmed that he was on the phone with the police prior to the alleged shove.

"[D.V.] testified that he did not see [Mother] touch the vehicle at any time during the exchange."

Father testified on September 2, 2025, as summarized in the settled statement:

"[Father] testified to court ordered messages between [Mother] and [Father].  [Father] said that [Mother] said that she would be at the drop off

4.

location in the messages. [Father] then stated that she sent her fiancé to pick up the children. [Father] said that he did not release the children to [Mother's] fiancé due to previous conflicts.

"[Father] said that the drop off location was at a nearby police station that was mutually agreed upon between himself and [Mother].

"[Father] said that he let his daughter out of the car from the passenger side back seat then walked back over to the driver's side of his vehicle. [Father] said that [Mother] was served with paper [*sic*] by his friend who was at the location with him. [Father] continues on to say that after being served she walked over to his vehicle.

"[Father] testified that [Mother] was the primary aggressor. He stated that [Mother] stood very close to his vehicle and aggressively reached inside to remove their son's seatbelt. [Father] testified that he told [Mother] multiple times to stop touching his car and to step away.

"He denied ever shoving or striking [Mother] and testified that his arm was raised defensively to protect himself and his son from [Mother] reaching into the car. He stated that he closed the car's convertible top to prevent the situation from escalating further. [Father] also testified that [Mother] caused damage to his car's top while he was closing it by grabbing at it and trying to reaching [*sic*] in while it was going up. [Father] said that [Mother] caused damage to the car by scratching due to keys she had in her hand. [Father] said that vehicle damage was caused by [Mother's] fiancé. [Father] testified that [Mother's] fiancé caused damage to his spoiler on his car when he was behind the car.

"[Father] said that [Mother] is escorted out after court hearings. He also said that he believes that [Mother] is not afraid of him.

"[Father] said that [Mother] took matters in her own hands by escalating the situation instead of waiting for the police who were already called.

"[Father] explained that his actions were defensive and that [Mother] has a pattern of using police and [child protective services] to harass him. He also testified that he believes [Mother] filed for the restraining order to gain an advantage in child custody matters."

Father's witness, A.J., testified on September 2, 2025, as summarized in the settled statement:

"[A.J.] heard [Mother] say, 'be ready for what's about to happen next,' which sounded angry and upset, before the exchange took place.

5.

"[A.J.] observed the children speaking with their mother over the phone: the daughter expressed she wanted to go home, and the son stated he wanted to stay with [Father].

"[A.J.] testified that she was not at the scene of the incident."

Proffered and admitted exhibits were documented as follows:

"Exhibit B: Police report documenting damage to [Father's] vehicle caused during the incident.

"Exhibit C: Photograph showing how close [Mother] stood to [Father's] vehicle.

"Exhibit D: Photograph showing [Father's] arm position.

"[Mother's] Photo (no exhibit label): Photo of alleged red mark on [Mother's] arm.

"Court-Ordered Message Log: Communication between [Mother] and [Father] from the day of the incident. [Mother] objected on grounds of relevance when [Father] attempted to use messages from the day of the incident. Court's Ruling: Overruled. Judge allowed [Father] to present the messages after confirming their authenticity with [Mother]."

The court's findings that Father challenges were described in the settled statement: "The court found [Mother's] witness to be credible and not aggressive. The judge stated that [Mother] was the initial or primary aggressor when she approached [Father's] vehicle to retrieve her son, but found that [Father] became the dominant aggressor at the end of the incident, relying on a photo that appeared to show [Father's] arm raised. The court further found, by the preponderance of the evidence, that a restraining order should issue against [Father]."

## DISCUSSION

Father argues the trial court committed several prejudicial errors in ruling on the DVRO petitions, including that the court's order granting Mother's DVRO petition is unsupported by substantial evidence.

As an initial matter, we note that Mother did not file a respondent's brief on appeal. Such a failure is not treated as a de facto default; rather, the reviewing court examines the appellant's brief in conjunction with the record to determine if the appellant

6.

carried his burden of demonstrating prejudicial error at the trial court level. (*In re Bryce C.* (1995) 12 Cal.4th 226, 232–233; *In re Marriage of Swain* (2018) 21 Cal.App.5th 830, 834, fn. 2; Cal. Rules of Court, rules 8.220(a)(2) & 8.360(c)(5)(B).)

As such, we turn to examine each of Father's claims of error.

## I.     Family Code Section 6305:  Dominant Aggressor Analysis

In finding that Father acted as the dominant aggressor, Father makes several arguments that the trial court's analysis was flawed and erroneous.

### A.     General Legal Principles and Standard of Review

"Generally, a trial court has broad discretion in determining whether to grant a petition for a restraining order under [the DVPA's] statutory scheme." (*In re Marriage of Fregoso & Hernandez* (2016) 5 Cal.App.5th 698, 702.)  Pursuant to the DVPA, a court may issue a protective order "'to restrain any person for the purpose of preventing a recurrence of domestic violence and ensuring a period of separation of the persons involved' upon 'reasonable proof of a past act or acts of abuse.'" (*Nevarez v. Tonna* (2014) 227 Cal.App.4th 774, 782, quoting former § 6300; accord, § 6300, subd. (a).)  In relevant part, the DVPA defines domestic violence as abuse perpetrated against a spouse or former spouse, cohabitant or former cohabitant, or a person with whom the respondent is having or has had a dating or engagement relationship.  (§ 6211, subds. (a)–(c).)

Section 6305 governs whether a court may issue mutual domestic violence restraining orders.  Under this statute, "[t]he court shall not issue a mutual restraining order enjoining the parties from specific acts of abuse" unless it "makes detailed findings of fact indicating that both parties acted as a primary aggressor and that neither party acted primarily in self-defense." (*Id.*, subd. (a), (2).)  To determine whether both parties acted primarily as aggressors, "the court shall consider the provisions concerning dominant aggressors set forth in paragraph (3) of subdivision (c) of Section 836 of the Penal Code." (*Id.,* subd. (b).)  Penal Code section 836, subdivision (c)(3), provides that "The dominant aggressor is the person determined to be the most significant, rather than

7.

the first, aggressor. In identifying the dominant aggressor, an officer shall consider (A) the intent of the law to protect victims of domestic violence from continuing abuse, (B) the threats creating fear of physical injury, (C) the history of domestic violence between the persons involved, and (D) whether either person involved acted in self-defense."

DVPA orders are reviewed for abuse of discretion. (*Salmon v. Salmon* (2022) 85 Cal.App.5th 1047, 1054 (*Salmon*).) "The abuse of discretion standard is not a unified standard; the deference it calls for varies according to the aspect of the trial court's ruling under review." (*Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 711.) The trial court's findings are reviewed for substantial evidence, its conclusions of law are reviewed de novo; and its application of the law to the facts is reversible only if arbitrary and capricious. (*Id.* at pp. 711–712.) "'If the court's decision is influenced by an erroneous understanding of applicable law or reflects an unawareness of the full scope of its discretion, the court has not properly exercised its discretion under the law. [Citation.] Therefore, a discretionary order based on an application of improper criteria or incorrect legal assumptions is not an exercise of informed discretion and is subject to reversal. [Citation.]' [Citation.] The question of whether a trial court applied the correct legal standard to an issue in exercising its discretion is a question of law [citation] requiring de novo review [citation]." (*Eneaji v. Ubboe* (2014) 229 Cal.App.4th 1457, 1463.)

"'A judgment or order of the lower court is *presumed correct.* All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown. This is not only a general principle of appellate practice but an ingredient of the constitutional doctrine of reversible error.'" (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.)

## B. Analysis

The record on appeal consists of a clerk's transcript, which includes a settled statement in lieu of a reporter's transcript. Father did not request a statement of decision,

and the trial court did not issue one. Rather, Father filed a proposed settled statement, which the trial court certified as "an accurate summary of the testimony and other evidence that is relevant to [Father's] appeal."

As already noted, the settled statement reflects the following summary of findings the trial court made after the hearing: "The court found [Mother's] witness [D.V.] to be credible and not aggressive. The judge stated that [Mother] was the initial or primary aggressor when she approached [Father's] vehicle to retrieve her son, but found that [Father] became the dominant aggressor at the end of the incident, relying on a photo that appeared to show [Father's] arm raised. The court further found, by the preponderance of the evidence, that a restraining order should issue against [Father]."

Reyling on *Salmon*, Father argues the trial court erred by finding him to be the dominant aggressor without identifying what statutory factors supported that conclusion, or how Father's conduct could be construed as dominant aggression. Father maintains the court must do more than label one party the dominant aggressor, it must demonstrate on the record that it applied the statutory factors and explain its reasoning.

Father's reliance on *Salmon* is misplaced. In *Salmon*, the husband and the wife filed competing petitions for a DVRO, a hearing was held, and the trial court granted the wife's petition but denied the husband's petition. (*Salmon, supra*, 85 Cal.App.5th at p. 1052.) On appeal, the husband argued the trial court abused its discretion by failing to make factual findings with respect to each of the factors identified in section 6305 (as articulated in Pen. Code, § 836, subd. (c)). (*Salmon, supra*, at p. 1059.) The appellate court was unpersuaded, explaining that argument "ignores the fact that section 6305 acts only to limit the issuance of a mutual restraining order. The presence of the statutory factors and requirement of detailed factual findings are necessary prerequisites to a grant of mutual relief. [Citations.] Nothing in the statute mandates the issuance of a mutual restraining order. Nor does the statute require detailed findings of fact when the court declines to issue a mutual restraining order." (*Id.* at pp. 1059–1060.) As the trial court

had not issued mutual restraining orders, "the court was not required to make detailed factual findings," and was "required only to follow the general rule applicable to all petitions and provide 'a brief statement of the reasons for the decision in writing or on the record.'" (*Id.* at p. 1060, quoting § 6340, subd. (b).)

Likewise, in this case, the trial court did not grant mutual relief on the DVRO petitions—it granted only Mother's petition. The settled statement reflects a summary of the trial court's on-the-record statement of reasons, including that Father was the dominant aggressor, even though Mother was the initial/primary aggressor. From this, it can be inferred the trial court credited Mother's testimony that Father shoved her "when she reached inside the vehicle to unbuckle the child's seatbelt .…" Mother also presented photographic evidence of a bruise on her arm; there was also a photograph purportedly showing Father with his arm raised during the incident. Although Father submitted declarations and gave testimony that he did not shove Mother and raised his arm trying only to shield himself and their son in the car, the court clearly did not credit Father's version of events—a factual finding within the trial court's exclusive province to make. (*Sabbah v. Sabbah* (2007) 151 Cal.App.4th 818, 823; see *City of Manhattan Beach v. Superior Court* (1996) 13 Cal.4th 232, 262 ["the court is better positioned than are we to observe a witness's demeanor and discern his or her credibility"].) Mother's testimony, even if controverted, may constitute substantial evidence if the trial court credits it as true.

Penal Code section 836 defines "dominant aggressor" as "the person determined to be the most significant, rather than the first, aggressor." (*Id.*, subd. (c)(3).) In making this assessment, the court is to consider "(A) the intent of the law to protect victims of domestic violence from continuing abuse, (B) the threats creating fear of physical safety, (C) the history of domestic violence between the persons involved, and (D) whether either person involved acted in self-defense." (*Ibid.*; accord, § 6305, subd. (b).) From the settled statement's summary of the court's reasoning, it is clear the court did not

credit Father's assertion of self-defense and, on this issue, credited Mother's version of events instead. As Mother indicated Father resorted to physical force to push Mother away from the vehicle, leaving a mark on Mother's arm, there was substantial evidence to support the trial court's finding that Father was the dominant aggressor.

Father argues the trial court failed to expressly consider whether he acted in self-defense. However, as explained in *Salmon*, the court had no obligation to make *express* findings regarding the statutory factors where no *mutual* restraining orders were issued. Although Father disagrees with the court's implicit crediting of Mother's testimony and the photographs, they support the finding Father was the dominant aggressor, we do not reweigh the evidence on appeal. The trial court explained its decision for making its finding, and it was supported by substantial evidence. (§ 6340, subd. (b) [upon denying a DVRO petition, the court shall "provide a brief statement of the reasons for the decision in writing or on the record"].)

## II.    Substantial Evidence

Father argues the trial court's ruling was based only on speculation rather than substantial evidence, and thus constituted an abuse of discretion.

We review the court's factual findings supporting the grant or denial of a DVRO under the substantial evidence standard of review. (*Curcio v. Pels* (2020) 47 Cal.App.5th 1, 12.)  "In reviewing the evidence, we examine the entire record to determine whether there is any substantial evidence—contradicted or uncontradicted—to support the trial court's findings. [Citation.]  We must accept as true all evidence supporting the trial court's findings, resolving every conflict in favor of the judgment. [Citation.]  We do not determine credibility or reweigh the evidence. [Citation.]  If substantial evidence supports the judgment, reversal is not warranted even if facts exist that would support a contrary finding." (*Ibid.*)

Father argues no witness testified that he forcibly moved Mother in a manner consistent with causing injury, and Mother's witness, D.V., gave inconsistent testimony

about what he saw. According to the settled statement, the court characterized Father's conduct as forcibly moving Mother, and attributed Mother's red mark to that conduct, relying on a photograph rather than the testimony establishing that use of force. Father maintains the photograph was ambiguous and did not depict any act of violence.

The trial court clearly credited Mother's testimony that Father shoved her during the altercation, and found her testimony corroborated by the photographs. Although Father views the evidence differently, Mother's testimony and the photographs constituted evidence that is "'"reasonable in nature, credible, and of solid value"'" (*Melissa G. v. Raymond M.* (2018) 27 Cal.App.5th 360, 374), and "[t]he testimony of one witness, even that of a party, may constitute substantial evidence" (*In re Marriage of Fregoso & Hernandez, supra*, 5 Cal.App.5th at p. 703). Based on this evidence, the court's ruling is not speculative or built on unsupported inferences as Father argues. Moreover, even if the evidence could have supported a contrary finding, the trial court's assessment of witness credibility and probative weight of the evidence is "binding and conclusive" on appeal—the appellate court does not reweigh it. (*In re Marriage of Hill & Dittmer* (2011) 202 Cal.App.4th 1046, 1052.)

Relatedly, Father contends there is no evidence to support the finding that he was the dominant aggressor, and in making this finding, the trial court necessarily relied on inferences that are not supported by the evidence. Father points to the damage to his vehicle he claims Mother caused during the altercation, and he maintains there is no evidence she was not the one who damaged it. Father also argues there is no evidence he acted with any intent to provoke or intimidate Mother—rather, Father maintains, the evidence reflects only a routine custody exchange where Mother chose to approach Father's vehicle. Father points out Mother's voluntary approach to his vehicle supports an inference she was not afraid for her safety; there were pending petitions that Mother had violated custody orders; Mother made statements during the altercation that showed

she was threatening Father that she would get a restraining order; and no criminal charges were filed against Father related to the incident.

Essentially, Father contends the evidence should be viewed differently: his testimony and evidence regarding how the incident unfolded should be credited, and his actions should have been characterized as self-defense. Based on the settled statement, however, it is clear the trial court did not wholly credit Father's version of events, and it did not find that Father acted in self-defense. It is the trial court that hears the testimony, evaluates the demeanor and credibility of the witnesses, and assesses the probative weight of all admitted evidence. Even if the evidence could have supported the contrary findings Father contends should have been made, that is not a basis to reverse the ruling. (See *Schmidt v. Superior Court* (2020) 44 Cal.App.5th 570, 582 ["[o]ur job is only to see if substantial evidence exists to support the verdict in favor of the prevailing party, not to determine whether substantial evidence might support the losing party's version of events"].)

As already noted, Mother's and D.V.'s testimony was found credible in salient respects, and even to the extent their testimony may have conflicted to some degree, the trial court was free to evaluate what portions of their testimony to credit or discredit. (See *Minnegren v. Nozar* (2016) 4 Cal.App.5th 500, 513 [trier of fact may "'believe and accept a portion'" of a witness's testimony "'and disbelieve the remainder'"].) Their testimony was not inherently improbable or impossible, and it constitutes substantial evidence to support the trial court's ruling. (See *People v. Brown* (2014) 59 Cal.4th 86, 105 [unless demonstrably false, credibility determinations of a testifying witness are left to the trier of fact].) As for the damage to Father's vehicle, the court may have reasonably concluded Father's decision to close the convertible top escalated the altercation and functionally precipitated and proximately caused any damage to the car.

In sum, substantial evidence supports the trial court's ruling.

## DISPOSITION

The court's September 2025 ruling on the parties' respective DVRO petitions is affirmed.  Father shall bear his own costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(2).)